## Kemp's Ex'x. *vs.* M'Pherson, *et al.*—June, 1826.

S devised his real estate to his son J, at and for the price of £2000, the same to be paid by J, in equal shares, and at defined periods, to ten of the other children of the testator—J to give his bonds to such of the children as were of age for the payment of their proportions; and that J should have such estate in fee, he complying and paying to the said children their said shares of the said money. J took possession under the devise, paid some of the legacies, and afterwards sold the estate in fee to K, and executed a conveyance, referring to the devise, with warranty of title, K paying him at the time of the conveyance, a part of the purchase money, and giving him his bonds for the residue. Some of these bonds were assigned by J to M, and others. One of the bonds assigned to M, was paid by K, who always admitted his liability for the rest. K then died, and M obtained judgments at law upon the bonds he held, against D, the executrix of K. Some of the legacies bequeathed to S's children were not paid, and a decree was passed for the sale of the said estate for their payment. K, by his will, dated *before the conveyance* to him of the estate, devised all his estate to D, and made her his executrix. On a bill filed by D, stating herself to be the executrix and devisee of K, against M, to be relieved from the said judgments, on the ground that the said legacies were outstanding and an incumbrance on the said estate, and that until they were discharged, the payment of the bonds should not be enforced. A copy of K's will, and of his deed from J, were filed as exhibits with the bill. M's answer admitted D to be the devisee of the estate.

*Held,* 1. That land acquired after the execution of a will, does not pass by the will.

*Held,* 2. That whether the admission in M's answer, that D was the devisee of the said estate, when by D's own showing it appeared that she was not, precluded an enquiry into that fact, and that it was to be considered as not in issue. *Quere.*

*Held,* 3. That the legacies were a charge on the estate, either in the hands of J, or of the purchaser under him.

*Held,* 4. That although it is a general rule that an assignee of a bond is liable to all equities which exist against his assignor, yet there are circumstances which may place the assignee in a better situation than the assignor. That the conduct of the obligor may be such as to deprive him of an equity which he had against the assignor.

*Held,* 5. That wherever an assignee is induced to believe by the obligor, that the bond to be assigned will be paid, it would be a deceit upon the assignee to suffer the obligor afterwards to set up as a defence a concealed equity existing between him and the assignor.

*Held,* 6. That under the circumstances of this case the equity relied upon in the bill against the bonds upon which the judgments were rendered, was a concealed equity between the obligor and assignor, and could not affect M, the assignee; and, therefore, the relief prayed could not be granted.

APPEAL from a decree of *Frederick* County Court, sitting as a Court of Equity. The bill, filed on the 7th of November 1816, in the name of *Dorothy Kemp*, executrix of *Frederick Kemp*, against *Jacob Staley, John M'Pherson* and *Gilbert Kemp*, (the appellees,) stated that *Joseph Staley*, deceased, in his lifetime, being seized in fee of certain tracts of land lying in *Frederick* county, called *Foxe's Spy* and *The Resurvey on Low Hemper*, by his will dated the 4th of February 1808, devised, among other things, as follows: "I give and devise unto my son *Jacob Staley*, the plantation whereon I now dwell, at and for the price of two thousand pounds, current money, exclusive of my wife's thirds or dower, which I desire shall consist of the dwelling-house, garden and other improvements near the dwelling, and about twenty-five acres of land cleared, with the privilege of fire-wood—all during her natural life. And the two thousand pounds aforesaid to be paid by my said son *Jacob Staley* to my ten following named children; that is to say, to *Ann Mary Smith, Elizabeth Staley, Catharine Waughter, George Staley, Solomon Staley, Molly Staley, Mary Staley, Moses Staley, Susanna Staley, Maria Juliana Staley*, in equal shares, making to each the sum of two hundred pounds current money; which I desire and request him to pay in the following manner: One hundred pounds to each within one year after my death, and one hundred pounds to each at the expiration of two years after my death, to all my children named as aforesaid, except *Moses, Susanna* and *Maria Juliana*, who are yet under the ages as prescribed by law. Their parts I desire my said son *Jacob* to pay them respectively as they may arrive at age. And my will is that he pass bonds to those of age for the sums allotted to each, and payable at the periods above stated. Which said plantation, whereon I live, contains about one hundred and ninety-two acres, I give and devise as aforesaid to my son *Jacob Staley*, his heirs and assigns forever, in fee simple, he complying and paying to my other children the sums aforesaid, and letting my wife enjoy for and during her life that part assigned to her for her thirds or dower, unmolested." The bill then stated, that under the true legal construction of this devise of *Joseph Staley*, the lands aforesaid, being the plantation on which the testator dwelt, is liable for

and chargeable with the said sums of money so bequeathed to his children as aforesaid. That *Jacob Staley* has paid and discharged the legacies bequeathed to six of the children of the testator, and four of the said legacies left to four of the children are still unpaid, to wit, the legacy left to *Margaret*, who married *Michael Bruner*, the one left to *Susanna*, who married *George Bruner*, the one left to *Moses Staley*, and that left to *Maria Juliana*. That *Jacob Staley*, after the making the will aforesaid, and after the same was admitted to probat, contracted to sell the aforesaid lands so devised, together with another tract of land called *The Country Seat*, to *Frederick Kemp*, deceased, at and for the price of £2700 current money, and a few days thereafter conveyed the said lands to the said *Kemp*, [excepting the part devised by *Joseph Staley*, to his widow during her life; and also excepting one acre and 6 perches, part of *Foxe's Spy*, conveyed by *Jacob Staley* to *Peter Kemp*, on the 30th of August 1809. The land called *The Country Seat* is stated to have been conveyed on the same day to *Jacob Staley* by *Peter Kemp*, containing one acre and six perches,] by deed dated the 19th of February 1810, with a general warranty, and a covenant for further assurance, &c. That after the said contract, when bonds were to be executed for the purchase money, deducting £600 which was paid in cash, *F. Kemp* was sick, and his wife, (the complainant,) with *Gilbert Kemp*, executed the bonds for the balance of the purchase money, on behalf of the said *F. Kemp*. That the said bonds were without interest, and regularly paid as they became due, until *F. Kemp* recovered from his indisposition, when, on the 11th of June 1812, he, together with *Gilbert Kemp* his surety, executed four bonds each for the payment of £300, payable, without interest, at the times specified in the said bonds; upon which the bonds executed by the complainant, then the wife of *F. Kemp*, were cancelled. That the bonds so executed by *F. Kemp* were for the balance of the purchase money of the said lands so sold by *Jacob Staley* to *F. Kemp*, and in lieu of the bonds before given by the complainant, &c. That *Jacob Staley* afterwards sold and assigned the said bonds, three of them to *John M'Pherson*, (one of the defendants,) and one of them to *Elizabeth Bierly*; and one of the bonds so sold to M'*Pherson* has been paid and

discharged. That M'*Pherson* has brought suit (in the name of *Jacob Staley* for his use,) against the complainant as executrix of *F. Kemp*, on one of the bonds dated the 11th of June 1812, and payable on the 1st of February 1815, in which suit, she having no defence at law, she confessed judgment at October term 1816. The bill further charges, that at the time of the contract for, and the conveyance of the said lands, *F. Kemp* was ignorant of the legal construction of the will of *Joseph Staley*, and did not know that the land so devised was subject to, or liable for, the amount of the legacies charged thereon by the said will; and the £2700,. given, was the full value of the land at the time of the purchase and conveyance thereof, and which was bought by *F. Kemp*, free from all claims. That *Jacob Staley* has removed out of the state, and left no property, and three of the legatees, who were unpaid by him, viz. *Margaret*, together with her husband M*ichael Bruner; Susanna*, together with her husband *George Bruner*, and *Moses Staley*, filed a bill in the court of chancery against the said *Jacob Staley*, and the complainant, claiming to make the said land, so devised, liable for the amount of their legacies; to which bill an answer has been put in, and evidence taken under commission, and the cause stands in the court of chancery under rule for final hearing. That it is believed the court of chancery must, under the principles of the said court, decree that the said legacies are a lien upon the said land. That besides the legacies for which the said bill is filed, there is one other legacy due under the will of *Joseph Staley*, to wit, the legacy due to *Maria Juliana*, who is still an infant, and has not yet brought suit for it. The bill further charges, that the bonds thus given to *Jacob Staley* by *F. Kemp*, and assigned to *M'Pherson* and *Bierly*, are, in the hands of the assignees, liable to be affected by all equity to which they were liable in the hands of the assignor; and the amount of the legacies being greater than the amount of the bonds, that the said land ought in equity to be exonerated from the payment of the purchase money still due. That *F. Kemp* is since dead, having by his will (which is exhibited, dated the 10th of June 1809,) made the complainant his devisee and executrix. *Prayer* for an injunction against *Jacob Staley* and *M'Pherson*, to desist from all proceedings

upon the judgment aforesaid; and for general relief. Injunction was issued, and a publication ordered against *Jacob Staley*, the absent defendant. The answer of *Gilbert Kemp* is not material to the case. That of *M'Pherson* admitted the assignment to him of three of the bonds of *F. Kemp* by *Jacob Staley*, for a valuable consideration, and an assignment of one of them to Mrs. *Bierly;* and that the said bonds were executed for payment of the purchase money due to *Jacob Staley* for the land sold by him to *F. Kemp*. That upon the bonds assigned to him, suit was brought, and judgment recovered. He admits the will of *Joseph Staley*, and he submits to the court the legal operation thereof. To the proceedings in the court of chancery he was not a party, although if his interests were to be affected by that suit, it was proper that he should have been a party. That *Jacob Staley* married a daughter of *F. Kemp*, and the land sold by *Jacob Staley* to *F. Kemp* was contiguous to the land on which *F. Kemp* lived. That *F. Kemp* could not be ignorant of the contents of *Joseph Staley's* will, or that *Jacob Staley* was bound to pay the legacies. That *Gilbert Kemp*, the other defendant, eldest son of *F. Kemp*, and the surety in the said bonds, acknowledged to this defendant that the whole family knew that the land was bound for the legacies, but calculated on *Jacob Staley's* paying them off as they became due, he being in good circumstances at that time. *G. Kemp* at the same time assured this defendant, that the bonds which this defendant held should be paid off punctually, and that the land was a good bargain if it was taxed with the payment of the legacies. That *F. Kemp* was bound to take notice of the charges on the land, the same being on record, &c. That *F. Kemp's* purchase included another tract of land called *The Country Seat*, which was not charged with the payment of the legacies, for the whole of which he gave £2700, and the amount of the legacies was £2000. He has no doubt but that the lands purchased were of greater value than the complainant states them to be, and he has always been willing to exonerate the estate of *F. Kemp* from all loss or responsibility, and proposed, in a letter to the complainant, who under the will of her husband is entitled to this land, that he would take the land bought of *Staley* by *F. Kemp*, and refund the mo-

ney, with interest, which had been paid by *F. Kemp* or the complainant, and discharge the legacies for which the land was bound, on a deduction being made for the use of the farm since it had been in her possession; but the complainant refused to accede to the terms proposed. That at the time of the assignment of the bonds to him, he was ignorant of any dispute about them, or of any deduction being claimed from the amount thereof on any account whatever. That the assignments were made to him on the 13th of June 1812, and sometime before the death of *F. Kemp*, and with his knowledge, and who never pretended to claim that any deduction should be made from the bonds, but paid the same as they became due.

On motion of the complainant leave was given to her to file a supplemental bill. That bill stated, among other things, that the original bill referred to certain proceedings in the court of chancery on a bill filed by certain of the legatees against *Jacob Staley* and the complainant, which was then depending and undetermined. That the said suit had since been finally decided. The bill in that case was originally filed against *F. Kemp*, who answered it, and on his death a bill of revivor was filed, stating that he was dead, and that by his will he left "his wife *Dorothy* sole devisee and trustee or executrix of all his real and personal estate," and prayer that she might be summoned, &c. She appeared and answered, admitting that *F. Kemp* was dead, and that she was his executrix. Testimony was taken under a commission, and the chancellor decreed, that unless the defendants in that suit should pay to those complainants, viz. to M*ichael Bruner* £100, with interest from the 17th of February 1809, and £100, with interest from the 17th of February 1810; to *George Bruner*, and *Susanna* his wife, £200, with interest from the 14th of April 1810; and to *Moses Staley* £200, with interest from the 11th of February 1815; the land in the proceedings mentioned devised to *Jacob Staley*, and sold by him to *F. Kemp*, be sold, &c. The supplemental bill further stated, that in order to prevent the said land from being sold according to the said decree, the complainant had been compelled to pay the said three legacies, with interest, and had paid the same, &c. The answer of *M'Pherson* to the supplemental bill stated, that he was not a party, al-

though the complainant might have made him a party to the proceedings in the court of chancery referred to in the supplemental bill, if his interest was involved in that suit. The original and supplemental bills, (due publications having been made, &c.) were taken *pro confesso* as to *Jacob Staley*. Commission issued to take testimony, and testimony was taken and returned. The cause being submitted, SHRIVER, A. J. (March term 1824,) *Decreed*, that the injunction be dissolved, and the bill of complaint dismissed, with costs to M'*Pherson*, one of the defendants; and that *Jacob Staley* and *Gilbert Kemp*, the other defendants, each pay his own costs. From this decree the complainant appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Palmer*, for the Appellant, contended, 1. That the bonds assigned to Col. *M'Pherson* by *Jacob Staley* were subject to all the equity in his hands that they were liable to in the hands of *Staley*.

2. That the legacies specified in *Joseph Staley's* will were a charge on the land sold by *Jacob Staley* to *Frederick Kemp*, the appellants' testator.

3. That *Frederick Kemp* had an equitable claim against the bonds in the hands of *Jacob Staley*, the assignor, by reason of the said charge on the land.

4. That *Dorothy Kemp*, the appellant, as the devisee of *Frederick Kemp*, and the owner of the land, was entitled to all the equity which the devisor had in his lifetime, and was also entitled to the same relief against the bonds so assigned.

On the *first* point, he cited *Turton vs. Benson*, 1 *P. Wms.* 496. *Livingston vs Dean*, 2 *Johns. Ch. Rep.* 479. *Murray vs. Lylburn*, Ibid 441. *Steiner vs. Fell*, 1 *Dall. Rep.* 28. *Norton vs. Rose*, 2 *Wash. Rep.* 233. *Matthews vs. Wallwyn*, 4 *Ves.* 121. *Lloyd, Ex parte*, 17 *Ves.* 245; and *Davies vs. Austen*, 1 *Ves. jr.* 249.

On the *third* point, he cited *Sugd.* 345, (Ed. 1820.) *Newman vs. Rogers*, 4 *Bro. Ch. Rep.* 394. *Tourville vs. Naish*, 3 *P. Wms.* 306. *Frost vs. Beekman*, 1 *Johns. Ch. Rep.* 301. *Wigg vs. Wigg*, 1 *Atk.* 384. *Story vs. Lord Wind-*

*sor,* 2 *Atk.* 630. *Myddleton vs. Lord Kenyon,* 2 *Ves. jr.* 394. *Anonymous,* 2 *Freem.* 106, pl. 118. *Gilb. Eq. Ca.* 6. The answer states, that the complainant must resort to the covenant in the deed. Whether there was a covenant or not is of no consequence. *Sugd.* 345. But here there was no covenant of seizin; there is only a covenant against eviction. As to the effect of notice, he cited *Sugd.* 526. 2 *Eq. Ca. Ab.* 32. *Joy vs. Campbell,* 1 *Sch. & Lef.* 345. *Crofton vs. Ormsby,* 2 *Sch. & Lef.* 583. *Burkart vs. Bucker,* 2 *Binny,* 455; and *Davison vs. Waite,* 2 *Munf.* 527.

To show that one co-defendant may examine his co-defendant, and to show that *Gilbert Kemp* might have been examined, he cited 2 *Madd. Chan.* 315. *Murray vs. Shadwell,* 2 *Ves. & Beam.* 401. *Bellow vs. Russell,* 1 *Ball. & Beatty,* 99; and *Mayor and Aldermen of Colchester, vs.* ——, 1 *P. Wms.* 596.

On the *fourth* point he insisted, that although it appeared by the record that *Frederick Kemp's* will was executed before the deed to him from *Jacob Staley,* yet the will was executed after the deed; and the presumption was, that the will was incorrectly copied as to its date. But the fact that the land passed under the will, had been admitted, and was not in issue. To show that parol evidence is admitted to explain a will, he cited 1 *Phill. Evid.* 467. 3 *Stark. Evid.* 1047; and *Hall vs. Cazenove,* 4 *East,* 477.

*Ross,* for the Appellees. What estate did *Jacob Staley* take under the will of *Joseph Staley;* and what did the legatees take, and what were their remedies? *Jacob Staley* was not bound to accept of the devise to him, and he would not have done so unless he thought he would have been benefited by it. It was an estate given to him upon certain conditions. The legacies were not a charge upon the land devised to, but upon the person of *Jacob Staley.* If he had not accepted the devise, then the legacies would have been a charge upon the land. It was an equitable charge as to the legatees, but personal when accepted by *Jacob Staley.* There was no power of entry upon the land by the legatees; if there had been, then their legacies would have been a lien. It was a conditional devise at law, and nothing more than legacies given to the legatees. It was not a

continued charge upon the estate, and not a legal lien; if it were the legatees might enter, or they might go into equity to have their legacies paid, but not otherwise. *Wigg vs. Wigg*, 1 *Atk.* 382, 383. *Glen vs. Fisher*, 6 *Johns. Ch. Rep.* 33, 34, 35. *Glen vs. Fisher's Adm'r. Ibid* 36. When the devisee accepted the land, he became personally bound; and if the land devised to him was not sufficient to pay the legacies, he was personally bound to pay them. The fund to which the legatees could resort, if the devisee had not accepted the devise to him, was to the extent of the land, and no further; and if the fund was not sufficient, they would lose their legacies to the extent of the deficiency. The legatees were not entitled to their legacies until particular periods; until then, it was a contingent interest in them, and on any of them dying, the legacy of such deceased would sink into the inheritance. *Prowse vs. Abingdon*, 1 *Atk.* 485. *Lowther vs. Condon*, 2 *Atk.* 133. *Richardson vs. Greese*, 3 *Atk.* 69. *Attorney General vs. Milner, Ibid* 112. The devisee became a trustee for the legatees, and as such he held the land. When *F. Kemp* purchased the property, he became a purchaser with notice, and stood in the place of *Jacob Staley*, and became a trustee, and made himself liable to the equitable results under the will. 2 *Fonbl.* 152. *Taylor vs. Stibbert*, 2 *Ves. jr.* 440. *Murray vs. Ballou*, 1 *Johns. Ch. Rep.* 575. *F. Kemp* being thus a trustee, he was bound to discharge all the duties he had assumed upon himself, which were to pay the legacies as they became due. A devise in trust to sell, or a charge made upon an estate, are similar, and the party takes it subject to the same rules. He is bound to see to the application of the money. *Sugd.* 368, 367, 371, 372. *Murray vs. Ballou*, 1 *Johns. Ch. Rep.* 575. *Ithell vs. Beane*, 1 *Ves.* 215. *Bailey vs. Ekins*, 7 *Ves.* 323. *F Kemp* took a covenant in his deed for a good title. An action of covenant may be brought on a warranty of title, although there has been no eviction. Any charge upon an estate is a defect of title. *Oglivie vs. Foljambe*, 3 *Meriv.* 64, 65. *Sugd.* 345.

As to the situation of *Kemp* in relation to *M'Pherson.* Where a bond is entered into, and the obligor has an equity, it must be provided for in the bond, or by way of endorsement.

The equity must appear upon the bond. Without such explana-
tion it would be harmless in the hands of the obligee, but not
so in the hands of an assignee. Who permitted these bonds to
work an injury? It was *Kemp.* As a general rule the as-
signee of a bond takes it subject to all equity; but this rule has
exceptions where an innocent party is to suffer. Here was an
equity of which the assignee had no notice. If the obligor had
an equity, and did not make it known, he waived it. A secret
equity is that of which the party has no notice; it is in opposi-
tion to that equity which is on record, and of which the party
has notice. *Kemp* paid some of the bonds to *Staley,* and he
paid one of them to *M'Pherson.* If the bonds were the fund
to pay the legacies, why pay any of them to *Staley? Kemp*
has committed a breach of trust, and yet upon that breach of
trust the equity is founded. If one of two innocent persons is
to suffer, it must be him who occasions the loss. *Lickbarrow
vs. Mason,* 2 *T. R.* 70. *Staley* committed a fraud, if the
bonds are liable for the legacies; and it is *Kemp* who enabled
him to do so by not placing the equity on the bonds. *Burke
vs. Allen,* 3 *Yeates's Rep.* 351.

It has been alleged that the complainant is the devisee of *F.
Kemp.* It is admitted that she is the devisee under the will
exhibited, but not of the lands in question. It may be said that
it is admitted in *M'Pherson's* answer that she is the devisee;
if it be so, an admission of a fact is obligatory on the party,
but an admission of a principle of law is not, because the court
are to judge of it. *Pearce vs Grove,* 3 *Atk.* 523. *Jones vs.
Smith,* 2 *Ves. jr.* 375. But there is no admission in the an-
swer of such a fact; neither is there in the bill any allegation
of her being the devisee of the particular lands, but generally
that she is the devisee of *F. Kemp.* The bill is filed in the
name of the complainant as executrix, and not as devisee of *F.
Kemp;* and as an executrix she cannot have a decree of the
court. She has nothing to do with the land—it belongs to the
heirs of *F. Kemp,* and did not pass under his will.

The testimony proves that *F. Kemp* declared that he would
pay the bonds. This shows the relative equities of the parties,
and his understanding as to how he was situated in relation to

these bonds, and his liability to the legacies, as well as to the bonds.

The deed from *Jacob Staley* to *F. Kemp* excepts out of it one acre and six perches, part of the land devised to *Jacob Staley* by *Joseph Staley*, which is stated in the deed to have been conveyed by *Jacob Staley* to *Peter Kemp*. It follows, therefore, that *Peter Kemp* ought to have been made a party, and so also ought Mrs. *Bierly*. Is *M'Pherson* to lose the debt due to him on the bonds, and *P. Kemp* to keep his land, and Mrs. *Bierly* to receive the amount of her bond? Is the complainant to be substituted in the place of the legatees? Her payment of the legacies was voluntary—it was made under an erroneous decree.

An assignee takes, subject to all equity, &c. but length of time, under particular circumstances, may alter the case. *Hill vs. Caillovel*, 1 *Ves.* 123. *Burke vs. Allen*, 3 *Yeates's Rep.* 351; and *Mayo vs. Giles*, 1 *Munf.* 537.

*Magruder*, on the same side. It is not denied that it was not known by Mrs. *Kemp*, and her counsel, that she was not devisee of the land in question. She does not ask relief as devisee, but that the personal estate should be exonerated from the payment of the bonds. She comes into court as executrix, not as devisee, and she does not state in her bill that she proved the will of her testator, &c. *Travis vs. Waters*, 1 *Johns. Ch. Rep.* 90. The answer of *M'Pherson* admits most of the facts. He states the grounds upon which he resists the claim, but he no where admits, nor is it charged in the bill, that the complainant was devisee of the land. There is no case where a purchaser can refuse to pay the purchase money while he refuses to give up the land purchased. *Abbot vs. Allen*, 2 *Johns. Ch. Rep.* 519. *Johnson vs. Gere*, *Ibid* 546. If *F. Kemp* could have been relieved, the complainant cannot, even if she was devisee, and had come into court as devisee. The complainant has selected one particular bond, against which she asks to be relieved. Suppose the land had been sold to seven different persons—all the land sold should contribute. *Stevens vs. Cooper*, 1 *Johns. Ch. Rep.* 425. All parties who have an interest in the subject matter should be brought before the court.

Mrs. *Bierly* and *P. Kemp* should have been made parties. But by selecting one of the bonds assigned to M'*Pherson,* that is to be made liable to pay all the legacies.

It is not stated that *F. Kemp* died seized of the land, or that he devised it to the complainant. Nor is there any such admission in the answer. If she, as executrix, ha·, paid the legacies, she paid them in her own wrong, and has been guilty of a *devastavit.* 1. If the bond had remained in the possession of *Jacob Staley,* what equity could be set up against it? 2. What is the effect of the assignment to Col. M'*Pherson?* 3. What effect will time and circumstances have in the case against the equity set up?

1. The land was liable to pay the legacies, and the devisee had no right to withdraw a part of it. The contract is *Staley's* deed. It was completed, and possession of the land delivered. The purchase money was secured by bonds. A purchaser of land buys it at his peril. He is bound to examine and to find out if there are any incumbrances. *Murray vs. Barlou,* 1 *Johns. Ch. Rep.* 566. *Chesterman vs. Gardner,* 5 *Johns. Ch. Rep.* 29. *Gouverneur vs. Elmendorf, Ibid* 79. It is no where charged in the bill that *Staley* had been guilty of a fraud or misrepresentation. There was no concealment by *Staley,* because the deed to *F. Kemp* refers to *Joseph Staley's* will. It was the duty of *Kemp* to examine into the title. He was bound to know of the legacies, and of their being a charge upon the land. If he did not intend to pay the legacies, he should have secured himself against their payment. *Caveat Emptor* is the maxim. But giving the lands, he has no right to say they should not be paid. If there had been an agreement with *Staley* that he was to pay the legacies, then in a suit brought on any of the bonds for *Staley's* use, the agreement might be set up; but that could not be done in a suit on any of the bonds for the use of another. The authorities, where the purchaser may retain the purchase money on account of incumbrances, &c. and where incumbrances on the estate do not affect the title, &c. are *Sudg.* 312, 315, 195, 165. *Waring vs. Ward,* 7 *Ves.* 337.

2. The assignee paying a valuable consideration stands in a different situation from that of the assignor. If *F. Kemp* had

any claim against the bonds, he was guilty of fraud in conceal-ing it from the assignee.   This is admitting that there was an agreement between *Staley* and *Kemp*, that the latter should not be liable for the legacies.   The assignee was not bound to know the consideration of the bonds.   There was nothing stated in them by which it could be known that there was to be any set off against them by the obligor.   The only inquiry necessary for the assignee to make of the obligor was, whether any payments had been made which were not credited.   An obligor well knows that the obligee may dispose of the bond; and if he had any equitable claim against it, he should insist on its being inserted in the bond, or endorsed on it.

3.  *F. Kemp*, with a full knowledge of all the circumstances, executed the bonds, and paid some of them as they became due. His declarations that the bonds must be paid, are in proof.

*Taney,* in reply.   The complainant, in the introductory part of the bill, need not state the character in which he sues, if it is sufficiently averred in the bill so as to show the right in which he claims relief.   The case of *Travis vs. Waters*, 1 *Johns. Ch. Rep.* 90, does not militate against this principle. There it was said that there was no averment that the com-plainant showed her character as executrix.   It was a bill of revivor, where she was attempting to identify herself with the original complainant.   A devisee is considered as an alienee; and a bill by an alienee need not, in the introductory part, state that he is alienee   Here the averment in the bill is that *F. Kemp* was dead, having made the complainant his devisee and executrix.   But it is said it is not averred that she is the devi-see of this particular land.   She has said that she is the devi-see, which not being denied, it is to be presumed that she is the sole devisee.   As if it was said that she was executrix, the presumption would be that she was sole executrix.   *Kemp* had no other land than that in question.   His will is exhibited, showing the complainant to be his sole devisee.   But it being alleged in the bill that she is the devisee of *F. Kemp*, and the answer admitting that she is entitled to the land under the will of her husband, can you go out of the bill and answer to ascer-tain whether or not she is the devisee of the land?   The will

exhibited is in conformity with the bill and answer. If the answer had denied her being the devisee of the land, she might have proved the fact that the will was executed after the deed from *Jacob Staley* to *F Kemp.* But it is not denied; the fact is therefore admitted, and she need not prove it. Suppose she had averred herself to be the heir at law, and it was admitted by the answer, would it not be conclusive on the parties that she was heir at law?

It is insisted that the proper parties are not before the court. All persons interested in the question are made parties. *Cromwell, et al. vs. Owings,* 6 *Harr. & Johns.* 14. P. *Kemp* had no interest in the result of the suit. It is not a question of contribution; but whether the complainant may apply the fund to exonerate the land. The bond assigned to *Mrs. Bierly* will not be affected by the decision in this case.

As to the real and relative equity. There was none against *Jacob Staley.* As between the vendor and vendee, it is proved that the land was sold for its full value, and the bonds given without a reference to the lien, relying on *Staley* for raising the incumbrance. There is a clear distinction, between a defect of title, and an incumbrance. *Sugd.* 195. Where an incumbrance is discovered, and the purchase money has not been paid, the purchaser may apply the purchase money to the extinction of the incumbrance. But where there is a defect in the title, a court of equity will not interfere. Recourse must be had to a court of common law. Where the incumbrance is a part of the estate, as a rent, then the vendee is bound to discharge it. *Sugd.* 24. *Tweddell vs. Tweddell,* 2 *Bro. Ch. Rep.* 152. *Waring vs. Ward,* 7 *Ves.* 337. These decisions go upon the meaning of the parties as collected from the contract and the nature of the estate sold. Here the contract was, that the incumbrance was to be discharged by the vendor and by the vendee. Col. M'*Pherson* was bound to know that the bonds were for the purchase money of the land, and was charged with the legacies. He stands in the situation of the obligee, and was bound to call on the obligor and obtain information; and if he did not, he is to be charged in the same manner as the obligee would be if he sought to enforce payment. An assignee takes the bond subject to all equity in the hands

of the obligee.   *Mayo vs. Giles,* 1 *Munf.* 536, per *Tucker,* J.
Here M'*Pherson's* equity is inferior to that of the vendee, but
it is good against the vendor.   This is the secret equity referr-
ed to in the books  *Burke vs. Allen,* 3 *Yeates,* 354.   But it
is alleged that *F Kemp* promised to pay the bonds.   There is
no such ground relied on in the answer.   What was the pro-
mise?  Look at the testimony.   It was an extorted promise,
such as it was, from a poor desponding old man, easily alarmed.
It has been said that the purchaser must give up the land before
he can claim to be released from the purchase money, and *John-
son vs. Gere,* 2 *Johns. Ch. Rep.* 546, has been cited.   In that case
there was a defect of title.   So also in *Abbott vs. Allen, Ibid*
519, there was an outstanding title which it was alleged might
be brought against the land; and the Lord Chancellor said he
should not set up a doubtful title to prevent the payment of
the purchase money.   The complainant was not bound to give
up the land on the proposition made by M'*Pherson.*   The ad-
missions of *Gilbert Kemp* cannot bind *F. Kemp.*   The an-
swer of one defendant is not evidence in favour of his co-de-
fendant.

  The covenant in the deed is not a covenant against incum-
brances; it is a general warranty as to the title, and is not bro-
ken until eviction.   It is not like a covenant of seisin.  *Green-
by vs. Wilcocks,* 2 *Johns. Rep.* 1.   *Folliard vs. Wallace, Ibid*
395.   *Kent vs. Welch,* 7 *Johns. Rep.* 258.   *Sedwick vs. Hel-
lenback, Ibid* 376; and *Vanderkarr vs. Vanderkarr,* 11 *Johns.
Rep.* 122.

  MARTIN, J. delivered the opinion of the Court.  *Joseph
Staley* by his last will and testament, among other things, de-
vised his dwelling plantation to his son *Jacob,* charged with the
payment of £2,000, in legacies to ten of his children.   *Jacob*
sold this land to *Frederick Kemp*  for £2,700, and executed a
deed to him for the  same.   Part of the purchase money was
paid at the time of the deed, and bonds were given for the re-
sidue.  Some of those bonds were paid by *Kemp* to *Staley,*
and three of them were sold and assigned by *Staley* to M'*Pher-
son,* and one to Mrs. *Bierly.*   One of the bonds assigned to
M'*Pherson* was paid by *Kemp* when it became due, and a suit

was commenced on another against *Dorothy Kemp*, executrix of *Frederick Kemp*, and judgment obtained against her. This bill was filed to obtain an injunction to stay proceedings on that judgment, because the land sold by *Staley* to *Kemp* was charged with these legacies, and the payment of the purchase money ought not to be enforced until it was freed from the incumbrance. The bill states that *Frederick Kemp* is dead, having first made his last will and testament, and appointed the complainant his executrix and devisee. The will of *Frederick Kemp*, and the deed from *Jacob Staley* to him, are both filed as exhibits by the complainant.

The first objection relied on in the argument was the want of proper parties. That the land sold to *Kemp* did not pass by his will, but descended to his children as his heirs at law, and that they ought to have been complainants in the cause.

If Mrs. *Kemp* is entitled to an injunction, it must be *as the devisee* of the land charged with the payment of these legacies. It is a settled principle of law, that a will can transfer no land, unless the testator was entitled to it, at the time he executed his will. This will bears date the 4th of February 1808, and the deed was executed on the 19th of February 1810. The date of the will is *prima facie* evidence of the time it was executed, and no attempt is made to prove its execution at any other time. It therefore appears from the exhibits of *the complainant herself*, that the deed was executed more than two years after the date of the will. But it is said this fact was not in issue—that it was admitted by the respondent, and cannot now be enquired into. The bill states in general terms, that the complainant was the executrix and *devisee* of *Frederick Kemp*, and the answer admits "that the complainant is entitled to this land *under the will* of her husband." Whether this admission would preclude the respondent from availing himself of the facts, as proved by the *complainant*, would be a question of importance, and would receive the attention of the court, if upon the merits of the case it appeared the appellant was entitled to relief against the judgment. The court, however, have formed a different opinion. They think the decree of the court below is correct, upon the merits of the case,

and it is therefore unnecessary to inquire who ought to have been made complainants.

Suppose the appellant to be the devisee of this land under the will of her husband, is she entitled to the relief prayed for in the bill?

The land was certainly charged with the legacies; and, whether in the hands of *Staley,* the devisee of his father, or of *Kemp,* the purchaser, was liable for the payment of them. Does *M'Pherson,* the assignee of *Staley,* stand in a better situation than his assignor? If he does, it must arise from other circumstances than the mere assignment; for as a *general* rule no position is better established than that the assignee stands in the shoes of the assignor, and takes the claim, subject to all the equity it possessed in his hands. Yet it appears there are exceptions to this rule, and circumstances may place the assignee in a better predicament than his assignor. The conduct of the obligor may change the relation that before existed between him and the assignee, and deprive him of an equity he had against the assignor. In *Sugden's Law of Vendors,* 482, it is stated—"It may be laid down as a general rule, that a purchaser of a chose in action, or of an equitable title, must always abide the case of the person from whom he buys—And yet there may be a case in which a purchaser, merely by sustaining that character, will be in a better situation than the person of whom he bought."

In *Norton vs. Rose,* 2 *Wash. Rep.* 251, Judge *Roane* says, "although I am clear in the opinion that an equity existing against a bond, is not lost or extinguished by an assignment for a valuable consideration, and without notice, yet it may be lost by length of time, *or other circumstances.*" The same doctrine was established in the case of *Buckner & others, trustees of Beverly, vs. Smith, Stubblefield & others,* in 1 *Wash. Rep.* 296. *Beverly,* when under age, lost a considerable quantity of tobacco, at unlawful gaming with *Smith,* who for a valuable consideration gave an order on him to *Stubblefield.* *Beverly* accepted the order, and gave his bond to *Stubblefield* for the amount. *Stubblefield* assigned the bond to *Graham,* and *Graham* to *Dixon,* each paying for the same a valuable consideration. *Beverly* promised *Dixon to pay him,* and confessed judgment in an action

brought on the bond. Judge *Lyons*, in delivering the opinion of the court, after stating that the *assumpsit* of *Beverly* to *Dixon* was after he came of age, said—"It is in general true, that the assignee of a bond of this sort can be in no better situation than the obligee, but this case is very different, and the difference is produced by the conduct of *Beverly*, who by his assurances of payment induced *Dixon* to receive an assignment of it. He not only concealed from him the objections to the bond, but afterwards assumed to pay it." In the case of *Hoomes, Executor of Elliott, vs. Smoot,* 2 *Wash. Rep.* 392, it is declared by the court, "that all bonds given for a gaming consideration are void as between the parties, and it is equally true that the assignee cannot stand in a better situation than the obligee, unless there be some particular circumstances in his favour, independent of the mere assignment. But if an innocent man shall be induced to become the purchaser of such a bond by the obligor, it is a *deceit* upon him, and he ought not to be subject to the same equity to which the obligor was entitled against the obligee." 'Tis true, in those two last cases it is stated, the conduct of the obligor induced the assignment. But that, it is conceived, can make no difference. The *gist* of these decisions is, that it was a *deceit* upon the assignee—it lulled him into a false security, and by inducing him to believe the bond would be paid by the obligor, in the one case made him take an assignment, and in the other prevented him from looking to the assignor for redress. It is not the time, but the *effect* of this conduct, that is to be regarded. He who asks equity, must be prepared to do equity; and an obligor, who with a knowledge of the whole transaction, promises to pay the assignee, cannot be favoured in a court of chancery against his solemn engagement.

Let us for a moment look into the evidence in the record, and see if there are such circumstances as would take this case out of the general rule.

It cannot be doubted that *Frederick Kemp* knew those legacies were a charge upon the land he purchased of *Staley.* He had both constructive and positive notice of it. In the deed of *Staley* to him, it is expressly stated, that *Staley* was entitled to the land conveyed, by the last will and testament of his

deceased father. And Mrs. *Kemp*, in the presence of her husband, and uncontradicted by him, declared "the will was on the table at the time the bonds were executed."

These bonds were to be paid at different, and some of them at distant periods; and yet *Kemp*, with a knowledge of the incumbrance, ushers them into the world without any intimation on the face of them that they were liable to a charge. This is certainly a concealed equity, and although not of itself sufficient to change the relation of the assignee, is a strong circumstance, with others, to rebut the equity set up against these bonds.

At the time the deed was executed, part of the purchase money was paid, and *Kemp* being indisposed, several bonds were executed by his wife and son for the balance; these bonds were regularly paid to *Staley* as they became due; and in 1811, *Kemp* having recovered his health, the bonds then remaining in the hands of *Staley* were cancelled, and four others were executed by *Kemp*, with his son as security for the amount of them. Were not these circumstances (without the aid of any declarations by *Kemp*,) calculated to convey the impression that *Kemp* would pay to *Staley* these bonds as they became due, under a confidence that *Staley* would discharge the legacies; and is not the testimony conclusive that such was his impression? *Staley* was his son-in-law, and he was disposed to favour him. He says, "he trusted *Staley* because he made such fair promises that he would pay the legacies,'" and regrets that he turned out a worthless fellow, and had deceived him; and in two conversations, when Mrs. *Bierly* called on him relative to these bonds, first at the room of *Mary Kemp*, he told her she was safe in taking one of them—that he would pay those bonds, although he should lose by *Jacob Staley;* and afterwards, at his own house, made the same promise, and again complained of his misplaced confidence in *Staley*.

Is it not evident, if *Frederick Kemp* had lived, he would have never set up this defence against the bonds in the hands of the assignees? One of them became due in his lifetime, and without making any objection, he paid it to *M'Pherson;* and his subsequent conduct and promises clearly prove it was his intention to pay them. He had no equity to be relieved against the payment of these bonds, and of course his devisee could derive none from him. *DECREE AFFIRMED.*