# THE GUARANTY SECURITIES COMPANY

*vs.*

# THE EQUITABLE TRUST COMPANY.

*Assignment of Contract—Purchase for Value—Equities—Estoppel.*

As against the assignee of a non-negotiable chose in action, for value and without notice, the debtor may be estopped, by reason of his representations or conduct, to assert defenses available against the assignor.                                    p. 421

Where a sales contract, in terms unconditional and covering "all agreements regarding this contract," having been assigned by the vendor, the vendee promised payment of the price named therein to the assignee, who acquired the contract for value and was without notice of equities based on a simultaneous supplemental contract, expressed to be a part of the main contract but not referred to therein, *held* that the vendee was estopped to assert such equities as against the assignee, who might, had he been informed, at the time of the vendee's promise of payment, as to the supplemental contract, have availed himself of a guaranty of the original contract given him by his assignor, the original vendor, who subsequently became financially involved.                                    p. 421

*Decided June 16th, 1920.*

Appeal from the Baltimore City Court (AMBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ., STOCKBRIDGE, J., not however participating in the decision.

*Robert Biggs*, with whom was *Charles S. Lerch* on the brief, for the appellant.

*Enos S. Stockbridge*, with whom were *France, McLanahan & Rouzer* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The Equitable Trust Company, of Baltimore, ordered in writing from the Budget Cheque Corporation, of Chicago, on April 11, 1917, a quantity of stationery to be used in the operation of a patented checking system for the convenience of the patrons of the purchasing institution. The system was designed to enable bank depositors to accomplish the payment of a number of commercial bills by the issuance of a single check to the bank for application to the accounts included in a list accompanying the check. It was stipulated in the Trust Company's order that of the total purchase price of $1,582 for the specified supplies, required for the use of the budget check system, the sum of $207 should be paid thirty days after shipment and the balance in monthly installments of $125 each, the first to be payable thirty days after the initial payment. Excess delivery to the extent of ten per cent. of the quantity purchased, and at a *pro rata* price, was permitted under the terms of the order. The concluding stipulation was as follows: "This order and the acceptance thereof are unconditional, shall not be subject to cancellation and cover all agreements regarding this contract between your company and ourselves." The order was immediately accepted in writing on behalf of the Budget Corporation by its eastern representative. At the same time a separate order in writing was given by the Trust Company for certain advertising and introductory service to be rendered by the Budget Corporation to promote the successful inauguration of the new system. The price agreed to be paid for this service was $750. The last clause of the order just mentioned was as follows: "Upon your acceptance hereof this supplemental agreement becomes a part of our budget cheque contract bearing date of April 11, 1917." This order also was at once accepted for the Budget Corporation by its representative who had negotiated the transaction.

The shipment of the supplies purchased under the first mentioned agreement was completed on June 12, 1917, and

that contract was on the same day assigned in writing and for value to the Guaranty Securities Company, a corporation engaged in the business of purchasing and collecting commercial claims. The assignment guaranteed the payments for which the contract made provision. On the following day the Guaranty Securities Company wrote the Equitable Trust Company notifying it of the assignment of the contract, which was described as "your contract of April 11, 1917, the amount of said contract being $1,582, plus $101.30, the amount of the overrun." The invoice, which had been similarly assigned, for the deliveries made under the contract, and the bills of lading for the shipments, were enclosed in the letter giving notice of the assignment. The letter requested remittance to the assignee of the installment payments as they matured. This notification was acknowledged by the Trust Company in a letter dated June 16, 1917, which stated that remittances would be made "in accordance with the assignment" to which the notice referred. On the 23rd of the following month the Trust Company sent $308.30 to the Guaranty Securities Company in payment of the initial installment of $207 for which the contract provided and the overrun of $101.30.

The performance of the separate agreement for service to be rendered by the Budget Cheque Corporation in the establishment of the budget check system for the Trust Company was postponed, by their mutual consent, until September, 1917, but the former corporation had then suspended operations because of financial difficulties. Consequently the service agreed upon was never rendered, and because of that default the Trust Company refused to make any further payments on account of the sales contract, of which the service agreement was by its terms made a part. In this suit by the Guaranty Securities Company the decisive question raised by exceptions to rulings of the trial Court on proposed instructions to itself, sitting as a jury, is whether the Trust Company is estopped by its conduct from invoking the general

rule that the assignment of a non-negotiable chose in action, though made to a purchaser for value and without notice, is subject to existing equities upon which the debtor may be entitled to rely as against the assignor. This theory of estoppel was excluded as the result of the action of the Court below in refusing the prayers offered by the plaintiff and in granting those submitted by the defendant, and the verdict and judgment being in the defendant's favor, the plaintiff has appealed.

There can be no question as to the existence of substantial equities which the defendant Trust Company could assert as against the Budget Cheque Corporation if it were the plaintiff in the present suit. While the contract for the purchase of the stationery required for the budget check system was complete in itself, yet by a simultaneous agreement in writing there was incorporated in it another contract which provided for the rendition of important services by the vendor in aid of the effective use of the material purchased. By the fact and method of this combination of the two contracts it is clearly indicated that as between the immediate parties they were intended to constitute an entire and not a divisible undertaking. It was the evident purpose to make the two agreements interdependent and thus to prevent the enforcement of a claim under one of them while as to the other the claimant was in default. If, therefore, this suit had been brought by the Budget Cheque Corporation, its failure to perform the service agreement, which had been expressly made a part of the sales contract on which recovery was sought, would undoubtedly be an available defense to the action. But the question is whether such a defense is sufficient in a suit brought by a *bona fide* assignee for value of the sales contract, when an express assurance was given by its terms that it was unconditional and represented the entire agreement between the parties on the subject with which it deals, and when the assignment was promptly recognized by the debtor corporation and payment promised by it to the as-

signee, without any reference being made to the existence of the service contract upon which the defendant now relies.

In 5 *Corpus Juris,* 966, it is said: "The general rule that an assignee acquires no greater rights than his assignor is subject to the qualification that the debtor may by his representations or conduct estop himself to set up against the assignee defenses which were available to him against the assignor." This principle has been recognized in Maryland decisions. *Kemp* v. *McPherson,* 7 H. & J. 336; *Harwood* v. *Jones,* 10 G. & J. 405; *Hall* v. *Purnell,* 2 Md. Ch. 137. In the pending case the theory of estoppel asserted against the assignor appears to be supported by the undisputed facts. There was not only an explicit statement in the assigned contract that it was unaffected by any conditions or agreements which it did not disclose in its own terms, but there was an unqualified and partially fulfilled promise by the defendant to recognize the assignment, with no intimation to the assignee that the assigned contract was not in fact unconditional, as it purported to be, but was subject to the performance of another agreement to which it did not refer. Moreover, the affirmative indication thus arising from the defendant's conduct that there were no undisclosed equities by which the assignment could be prejudiced, was given at a time when the assignor corporation had not yet suspended its business because of financial troubles, and when its guaranty of the assigned claim might have been more serviceable to the assignee as a means of securing reimbursement. The proof, therefore, justifies the conclusion that the conduct of the defendant was such as to induce a reasonable belief upon the part of the plaintiff as to the non-existence of any unrevealed equities as between the defendant and the assignor, and that the plaintiff was thus influenced to its injury. The case, as now presented by the record, contains all the elements essential to the application of the principle of estoppel. *First Nat. Bank of Catonsville* v. *Carter,* 132 Md. 221; *Rodgers* v. *John,* 131 Md. 462; *Carmine* v. *Bowen,* 104 Md. 204; *Mer-*

*chants Bank* v. *Williams,* 110 Md. 351; 10 *Ruling Case Law,* pp. 597, 689, 841; 16 *Cyc.* 680.

In the course of the trial below the plaintiff reserved ten exceptions to rulings on the admissibility of evidence. No error has been discovered in any of those rulings. The evidence which they admitted was all directed to the proof of the actual equities between the parties to the contract assigned, and we regard it as competent for that purpose. But there was error in the rejection of the plaintiff's first prayer, which involved the theory of estoppel, and in the granting of the defendant's prayers, by which that theory was excluded from consideration. For this reason the case will be remanded for a new trial.

*Judgment reversed, with costs, and new trial awarded.*