The National City Bank of New York, Plaintiff, *v.* Prospect Syndicate, Inc., Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, March 20, 1939.

*Harold H. Keefe* [*Lester Kissel* of counsel], for the plaintiff.

*Goodman & Mabel*, for the defendant.

Genung, J. This is an action by the assignee of a conditional sale contract to recover from the buyer the balance due thereunder.

On September 6, 1938, the Carburetor Combustion Corporation, as seller, and the defendant, as buyer, entered into a written conditional sale contract for the purchase and sale of a heating device called an " automatic unit," which contains the following provisions:

" All the terms, conditions and provisions of this contract are herein contained. No representations or warranties shall be binding upon the Seller unless endorsed in writing hereon and signed by a duly authorized officer of the Seller. * * *

" It is further agreed that, if any claim(s) should arise with respect to any warranty as herein set forth, such claim(s) will be made by the Buyer upon the Seller and not upon any Assignee of the Seller, and that the Buyer will not set up any such claim

as a defense or counter-claim as against any Assignee of the Seller hereunder.

" This Contract may be assigned by the Seller and if so assigned, the assignee shall have each and all of the rights of the Seller hereunder, but in the absence of express assumption of such liability, the assignee shall not be liable hereunder to the Buyer or his legal representatives or assigns."

The contract specified that payments were to be made in monthly installments to the " holder " at the office of this plaintiff.

Pursuant to the terms of the contract, the seller delivered the " automatic unit " to the defendant and installed it in the defendant's building. Thereafter and on September 19, 1938, the defendant executed an " Installation Certificate " wherein it certified that the seller had completely performed all its obligations under the said conditional sale contract and that the defendant accepted the performance as satisfactory.

The " Installation Certificate " states:

" *September* 19, 1938.

" I (we) the undersigned, hereby certify that all things and all materials as described or referred to in the Conditional Sale Contract entered into by and between

CARBURETOR COMBUSTION CORP.
(Seller)

and the undersigned, dated September 6, 1938, have been furnished by the said Seller; that the delivery and/or the installation as therein agreed by the said Seller to be made has (have) been fully completed as required, and that the said things, materials, delivery and/or installations have been and are hereby accepted by the undersigned as satisfactory.

" PROSPECT SYNDICATE, INC.
" By Isaac Terner
" (Buyer's Signature.) '

By written assignment the seller assigned and delivered the said conditional sale contract to this plaintiff. The seller also delivered the said " Installation Certificate " to this plaintiff.

In reliance upon the express terms of the written conditional sale contract and the " Installation Certificate," the plaintiff paid the seller $785, the purchase price specified in the conditional sale contract. On the same day the plaintiff notified the defendant in writing that it had become the owner and holder of the conditional sale contract and directed the defendant to make payments due thereunder to it and requested the defendant to inform the plaintiff immediately if the terms of the contract for the sale of

the "automatic unit" as shown by the conditional sale contract were not in accordance with the defendant's understanding. That written notice states: "Please be advised that we have acquired for value from the Seller a Contract entered into by you for the purchase of appliance(s), referred to in the accompanying statement. *The Seller has informed us that he has delivered and satisfactorily installed the merchandise ordered by you. If the appliance(s) or terms of the contract as indicated in this statement are not in accordance with your understanding, please advise us immediately.*" The defendant at no time communicated with the plaintiff regarding the terms and provisions of the conditional sale contract.

But after receiving the said notice the defendant made two monthly installment payments to the defendant in the manner required under the conditional sale contract. The defendant defaulted in making the installment payment due January 1, 1939, and has continued in default. The plaintiff demanded payment of the balance due under the contract and then commenced this action.

The defendant admits the execution of the instrument called a conditional sale contract upon which the plaintiff sues; but sets up that, simultaneously with the execution of that instrument, the seller and the defendant entered into an agreement contained in a separate and distinct written instrument, whereby the seller agreed to supply the defendant with coal, at a stated price, for a period of three years, and the buyer agreed to pay the seller therefor. The defendant contends that the breach of that separate "coal agreement" by the seller, after the plaintiff had acquired the conditional sale contract and notified the defendant thereof, constitutes a defense to this action to recover the balance due under a conditional sale contract.

The defendant also alleges as a defense that the seller knowingly made false statements of fact that the seller owned coal mines, which induced the defendant to purchase the "automatic unit" and enter into the "coal agreement."

The defendant alleges the same matters as counterclaims and seeks to recover from the plaintiff for the cost, above the "coal agreement" price, of coal it had to purchase in the open market.

The "coal agreement" refers to the conditional sale contract as "the National City Bank contract" and a rider attached to it provides that, if the seller should default under the "coal agreement," the buyer might request the seller to "repurchase the contract from the National City Bank and return the contract marked 'Cancelled.'"

The defendant is obligated by its conditional sale contract to pay to the plaintiff the balance due under that instrument, regard-

less of the default by the seller under the " coal agreement " and the misstatements of fact made by the seller.

The pattern of the two separate written instruments clearly shows that each written instrument represented a contract separate and distinct from the other; that the parties intended that only the instrument called a conditional sale contract was to be assigned by the seller to this plaintiff; and that the assignee was to be entitled to collect the installments payable thereunder by this defendant, regardless of the " coal agreement " or any other agreement between the seller and the defendant.

The conditional sale contract provides that all its terms, conditions and provisions are therein contained and that no representations or warranties shall be binding upon the seller unless indorsed in writing on the contract. That is indication that the conditional sale contract was separate and distinct from the " coal agreement."

The conditional sale contract further provided that, if any claims should arise under it, the buyer would be bound to assert them against the seller alone, and not against the assignee and that the buyer would not set up any such claim as a defense or counterclaim against the assignee. That shows that the buyer was to remain bound to make the installment payments regardless of any default by the seller, once the conditional sale contract was performed.

The " coal agreement " refers to the conditional sale contract as " the National City Bank contract," which shows that the defendant understood that *only* the conditional sale contract was to be assigned to this plaintiff.

The rider attached to the " coal agreement " is evidence that the defendant understood he was to be bound to this plaintiff even though the seller defaulted under the " coal agreement." For protection to the defendant, in such event, a provision was added that, in case of default under the " coal agreement," the seller was to " repurchase the contract from the National City Bank and return the contract marked ' Cancelled.' " If the defendant were to be excused from making further payments in the event of such default, that provision would be meaningless.

The conclusion is clear that the defendant contracted to be bound to make installment payments to the plaintiff, as assignee, under the conditional sale contract, regardless of any default under the " coal agreement " by the seller, and that the defendant was cognizant of that obligation.

Accordingly, the seller's alleged breach of the " coal agreement " is no defense to this action by this plaintiff for the amount due under the conditional sale contract.

Furthermore, the defendant is estopped from setting up as defenses the breach of the " coal agreement " and the alleged misstatements of fact.

Williston on Contracts ([Rev. ed.], vol. 2, § 432) says: " But the assignee of a non-negotiable chose in action, or of a negotiable note payable to order, assigned otherwise than by indorsement though he buys it for value, and in good faith, takes it subject to all defenses which the obligor may have had against the assignor, unless the debtor by the form of the instrument intrusted to the assignor or otherwise has estopped himself to set up a defense, or has given an absolute promise to pay the assignee in substitution for the assigned obligation. This principle is applicable not simply to defenses like non-performance, fraud, duress, mistake, covenant not to sue, which relate to the assigned obligation itself, but also to rights of set-off, or counter-claim arising out of separate matters which the obligor might have asserted against his original creditor, the assignor."

*Guaranty Securities Co.* v. *Equitable Trust Co* (136 Md. 417; 110 A. 860) was an action similar to the case at bar. The plaintiff sued. as assignee of the seller, to recover the balance due under a written conditional sale contract executed by the defendant buyer, providing for the sale of a " check system." The defendant set up as a defense that the seller had breached a separate written agreement entered into between the seller and the defendant, simultaneously with the conditional sale contract, which provided for certain advertising and introductory service of the " check system," to be rendered by the seller to the buyer over a period of time, and that the agreement should be a part of the conditional sale contract. The conditional sale contract provided: " This order and the acceptance thereof are unconditional, shall not be subject to cancellation and cover all agreements regarding this contract between your company and ourselves." The plaintiff purchased the conditional sale contract from the seller and notified the defendant of the assignment. The latter made several installment payments to the plaintiff. After the seller defaulted under the separate contract, the buyer refused to continue payments to the plaintiff. The Court of Appeals of Maryland reversed a judgment in favor of the defendant and held that the plaintiff was entitled to recover, because the defendant was estopped from setting up the existence of the separate contract. The court said:

" But the question is whether such a defense is sufficient in a suit brought by a *bona fide* assignee for value of the sales contract, when an express assurance was given by its terms that it was unconditional and represented the entire agreement between the

parties on the subject with which it deals, and when the assignment was promptly recognized by the debtor corporation and payment promised by it to the assignee, without any reference being made to the existence of the service contract upon which the defendant now relies.

" In 5 Corpus Juris, 966, it is said:

" ' The general rule that an assignee acquires no greater rights than his assignor is subject to the qualification that the debtor may by his representations or conduct estop himself to set up against the assignee defenses which were available to him against the assignor.' * * *

" In the pending case the theory of estoppel asserted against the assignor appears to be supported by the undisputed facts. There was not only an explicit statement in the assigned contract that it was unaffected by any conditions or agreements which it did not disclose in its own terms, but there was an unqualified and partially fulfilled promise by the defendant to recognize the assignment, with no intimation to the assignee that the assigned contract was not in fact unconditional, as it purported to be, but was subject to the performance of another agreement to which it did not refer. * * * The proof, therefore, justifies the conclusion that the conduct of the defendant was such as to induce a reasonable belief upon the part of the plaintiff as to the non-existence of any unrevealed equities as between the defendant and the assignor, and that the plaintiff was thus influenced to its injury. The case, as now presented by the record, contains all the elements essential to the application of the principle of estoppel."

In *Bank of Centerville* v. *Larson* (47 S. D. 374; 199 N. W. 46) the plaintiff purchased the defendant's obligation on the faith of a letter signed by the defendant, directed to the plaintiff, stating " you are at liberty to purchase my note of this date for $12,500 if you desire. There are no offsets or conditions against this note." The Supreme Court of South Dakota held that the defendant was estopped from setting up fraud or failure of consideration as a defense, and said: " We hold that the maker of this instrument, under the facts disclosed, is estopped from asserting any defense against the note in the hands of the purchaser made in good faith without any notice of the vices connected with the transaction at the time of the purchase. Even if the note was obtained by fraud, the defendant could not escape from the written assurance that induced the purchase."

In *Continental National Bank* v. *National Bank of Commonwealth* (50 N. Y. 575) the Court of Appeals held that the defendant was estopped by its representation that a certain document was valid, and said: " It is not necessary to an equitable estoppel

that the party should intend wilfully to mislead; but whatever may be the intent, if he make such a representation as a sensible man would take to be true, and believe that it was meant that he should act upon it, and he does so act, the party making the representation is precluded from contesting its truth."

In the case at bar the plaintiff paid value, in good faith, for the defendant's obligation to pay the balance due under the instrument called a conditional sale contract, in reliance upon that instrument, which provided that all its terms, conditions and provisions were therein contained and that no promise should be binding upon the seller unless indorsed in writing on the contract, and in reliance upon the " Installation Certificate," wherein the defendant certified that the conditional sale contract had been fully and satisfactorily performed. After such promise and representations, the defendant cannot now be heard to say, as against the plaintiff, that the conditional sale contract was dependent upon performance of the " coal agreement " or that the defendant was induced by misstatements of fact to sign the two instruments.

Furthermore, the defendant agreed in the conditional sale contract not to assert any defense or counterclaim against the assignee.

In *Westchester Square Plumbing Supply Co.* v. *Vandroff* (N. Y. L. J. Jan. 18, 1939, p. 268) Mr. Justice McLAUGHLIN, at Supreme Court, Bronx county, Special Term, said: " Plaintiff moves for summary judgment. There does not appear to be any defense to this action. If the defendants have any claim for damages by reason of a breach of warranty in connection with the oil burner purchased by them, that is a matter solely between them and the seller. The defendants by agreement have agreed to the transfer of this claim to an assignee and have expressly waived in writing any defense against such assignee based upon any alleged breach of warranty. The defendants may not repudiate their written contract.". That case involved a contract in substantially the same form as this one.

The form of these conditional sale contracts shows that it was the intention of all parties concerned that the transaction should be financed by the seller assigning the contract to a bank and thus enabling the seller to obtain the purchase price of the goods promptly and the buyer to pay for the goods he receives, over a period of time.

The particular provisions above referred to are clearly intended to protect the bank which purchases the contract against just such defenses as those the defendant here seeks to interpose.

If effect were not given to these provisions, it would be impossible for banks to finance such installment purchases.

The plaintiff's motion for summary judgment is granted. Counterclaim dismissed.