GEORGE L. HUNTRESS & another, trustees, *vs.* DUDLEY P.
HANLEY & others.

Suffolk.    December 5, 1906. — April 22, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice,* Master's report. *Assignment,* Consideration, Validity.
*Husband and Wife. Fraud. Real Estate. Estoppel.*

Under Chancery Rule 31, if exceptions to a master's report are filed seasonably
but have not been preceded by the filing of objections to the draft of the report
as required by the rule, although "requests and suggestions" were filed with
the master, the questions attempted to be raised by the exceptions cannot be
brought before this court by an appeal from a decree confirming the master's
report, except so far as they are included in the question whether the decree
was warranted upon the pleadings and the report.

A promise by a woman to marry immediately a man whom she has promised to
marry at some indefinite time when he shall be able to support her is a good
consideration for an assignment to her by the man, executed two weeks before
their marriage, of all his interest in the estate of his father.

An assignment of property made by a man to a woman two weeks before their
marriage in consideration of her promise to marry him immediately is not an
antenuptial settlement under R. L. c. 153, §§ 26, 27, and the requirements of
that statute do not apply to it.

An assignment of property made by a man to a woman two weeks before their
marriage in consideration of her promise to marry him immediately, if the man
at the time was free from debt to everybody except the woman and it is not
shown that his real purpose was to hinder or delay his future creditors, is not
fraudulent as against such future creditors.

Whether an assignment by one of the beneficiaries of a trust fund, created by a
testator who had in mind the possession or possible possession of real estate
and partly invested in real estate, of all his interest in the fund is a conveyance
of an interest in real estate which should be recorded as such, *quaere.*

If a man makes an assignment of property to a woman two weeks before their
marriage in consideration of her promise to marry him immediately, and there-
after while this assignment is unrecorded and without the knowledge of his wife
fraudulently makes a mortgage of the same property to another person for a
valuable consideration, representing that he has made no other conveyance of
the property, and if the supposed mortgagee has his mortgage recorded in the
office of the city clerk and about six weeks after its execution notifies the wife
of the existence of the mortgage in a letter to which she makes no reply, these
facts do not estop the wife from asserting her title to the property against the
supposed mortgagee, whom she did not induce to change his situation by any
speech or conduct.

RUGG, J.    The plaintiffs are trustees under the will of Pat-
rick T. Hanley late of Boston.    They bring this bill of inter-

pleader for instructions as to the persons to whom to pay a portion of the residuum held under the terms of that will. Paragraph (*h*) of clause tenth of the will * authorized the trustees to terminate the trust therein created as to the share of any of the beneficiaries, and the plaintiffs have exercised that power by terminating the trust so far as it relates to the interests of Dudley P. Hanley. Mary A. Hanley claims this entire share by virtue of an assignment dated April 18, 1899. Thomas Allen claims to be paid out of the fund $10,000 with interest, by virtue of an assignment to him dated July 7, 1900, and James C. McEachen claims certain sums by virtue of an assignment to him, dated August 8, 1902. One Skinner also claimed an interest in the fund by virtue of another assignment, but no question arises respecting his claim, for the reason that the master found against it and no appeal has been entered from a decree adverse to his contention.

The case was referred to a master, who found, so far as material to the issues now raised, the following facts :

Mary A. Hanley, whose maiden name was Donahue, became acquainted with Dudley P. Hanley in 1885. This acquaintance continued until 1897, when they became engaged to be married. No definite time was then fixed for the marriage, and Miss Donahue, who was a nurse, declined to fix any time until Dudley's circumstances should become such that he could support her without the assistance of her professional income. The testator died on March 31, 1899, and at his funeral Dudley learned the terms of the will. He returned to New York on April 9, 1899, and soon after offered orally to give Miss Donahue an assignment of his interest in his father's estate, if she would marry him. An assignment was then drafted and on April 18, 1899, it was executed and delivered to Miss Donahue. This assignment was never recorded and no notice of its existence was given to the trustees until March, 1904. The master found " that at the time said assignment was executed it was fully understood and agreed between Hanley and Miss Donahue, that said assignment was given in exchange for and in consideration of Miss Donahue's promise to marry Hanley." He did

---

* See *ante*, pages 228-230.

not find that Hanley at the time of the execution of the assignment owed any debts other than some loans from Miss Donahue. On May 6, 1899, Hanley and Miss Donahue were married. On July 7, 1900, Hanley executed an assignment or mortgage of his interest in his father's estate to Thomas Allen, to secure a promissory note for $10,000 of even date, given for a valuable consideration, Hanley falsely and fraudulently representing to Allen at the time that he had made no other conveyance of his interest in his father's estate. This assignment was recorded in the office of the city clerk of Boston, and notice of it given to the trustees. It was executed in Boston and Mrs. Hanley was not present and the master does not find " that Mrs. Hanley authorized, or sanctioned, or took any part in, or had any knowledge of, this transaction before or at the time it occurred. Nor . . . that she ever saw Allen or ever had any dealings with him either before or after said assignment was executed. About six weeks after the execution of the assignment, Allen notified Mrs. Hanley, by letter, that such an assignment had been made to him, and, so far as appears, that was the first notice or knowledge of said assignment which she received." Portions of testimony from certain witnesses before the master have been reported, but the master states that none of his findings were based solely on the testimony reported, as there was other evidence touching the matters. The master found in favor of the claim of James C. McEachen and no appeal has been taken from that portion of the decree directing the trustees to pay the amount of his claim as found by the master. Upon these findings, the master ruled that the assignment by Dudley P. Hanley to Mary A. Donahue (now Hanley) was valid, executed for a sufficient consideration and, being prior to the assignment to Allen, was entitled, as against Allen, to the share of Dudley in the trust estate. Various " requests and suggestions " were filed with the master, but no objections to the draft of his report appear to have been filed by Allen. He seasonably filed, however, a number of exceptions to the master's report. This course was not a compliance with Chancery Rule 31 and questions raised by the exceptions are not properly before us, no special order of the court allowing exceptions having been entered. *Hillier* v. *Farrell*, 185 Mass. 434. *Whitworth* v. *Lowell*, 178 Mass. 43, 50. A single justice

of this court made a decree confirming the master's report, and the case is here on Allen's appeal from that decree. The only question open before us properly is whether the decree was warranted on the pleadings and the report. *Haskell* v. *Merrill*, 179 Mass. 120. *French* v. *Peters*, 177 Mass. 568. Allen, however, lost no rights, as all his exceptions probably would be overruled and he has argued only points arising upon the record. There are two main questions, one as to the validity of the assignment to Mary A. Donahue, and the other as to her acts alleged to create an estoppel, which prevent her from enforcing her rights under that assignment.

1. It long has been the law of this Commonwealth that " a legal contract and promise made in good faith to marry another must . . . be deemed to be a valuable consideration for the conveyance of an estate, and will justly entitle the grantee to hold it against subsequent purchasers, or the creditors of the grantor." Merrick, J. in *Smith* v. *Allen*, 5 Allen, 454, 459. It has been strongly urged in behalf of Allen, that, inasmuch as Dudley P. Hanley and Mary A. Donahue were engaged to be married in 1897, the finding of the master, that the assignment made in 1899 was in exchange for and in consideration of the promise to marry, is wrong, and the assignment cannot be founded upon a valid consideration. This argument is based upon the familiar principle that a promise to do what one is already bound to do is not based upon a sufficient consideration. At the time of the promise to marry in 1897, however, no time was fixed for the marriage and Miss Donahue had subsequently refused to fix a time for marriage until her betrothed should be so financially able to support her that she would not be obliged to pursue her calling as a nurse. The death of Dudley P. Hanley's father in 1899 and the provisions of his will did not necessarily place him in any substantially better position than before, for the reason that the bulk of the estate was by clause tenth of the will placed in the hands of trustees, who were vested with an absolute discretion as to advancements to the children, (except as to a comparatively small sum,) coupled with the injunction that no payment whatever should be made unless the child was in extreme need of support or maintenance. The situation between Dudley and Miss Donahue, after the death of the testator, was

that there was a definite promise to marry at some indefinite time in the future, when the financial situation of the parties might seem to both of them to warrant it. .Thereupon, Dudley offered to give the assignment of his interest in his father's estate to Miss Donahue if she would marry him, which may fairly be interpreted to mean, in view of the subsequent events, if she would immediately marry. The assignment was delivered on the eighteenth of April and the marriage occurred on the sixth of the next May. Even if the finding of the master be narrowly construed so as to mean that the general engagement for marriage made in 1897 continued, there was connected with the execution of the assignment such a change in the terms of the original contract as to constitute a sufficient consideration for the assignment. Allen relies upon *Deshon* v. *Wood*, 148 Mass. 132, as supporting his contention, but, in that case, the title to the property was not to vest until the marriage; here, the assignment was executed and delivered two weeks before the marriage, which brings it clearly within the rule of *Smith* v. *Allen, supra.* The suggestion that the transaction amounted to an antenuptial settlement within the terms of R. L. c. 153, §§ 26, 27, has no force in view of this fact.

There is nothing in the record to require the inference that the assignment to Miss Donahue was fraudulent or executed with intent to defraud future creditors. The master found that there were no existing creditors. It being the fact that Dudley P. Hanley was free from debt to everybody except Miss Donahue, there is no evidence which compels the conclusion as matter of law that his real purpose was to hinder or delay his future creditors, or that his motive was not to transfer the property for the benefit of his future wife "so that it should not remain at the hazard of business or be subjected to the risk of improvidence." *Winchester* v. *Charter*, 12 Allen, 606, 609. *Hart* v. *Brierley*, 189 Mass. 598. Moreover, the fact that the conveyance to Miss Donahue was made in consideration of marriage and is upheld on that ground disposes of the argument that it was fraudulent. There is no room for the application of *Matthews* v. *Thompson*, 186 Mass. 14, 23.

It has also been urged that the property conveyed by this assignment was real estate, and the instrument not being recorded,

Mrs. Hanley cannot assert her title against creditors of the assignor. The will, which was executed in 1898, bears some internal evidence that the testator had in mind the possession or possible possession of real estate. But there is nothing before us to show that at the time of his death he owned any real estate, or that any of the trust fund at the time of the assignment to Miss Donahue or to Allen was invested in real estate. Allen did not proceed upon the theory that his assignment conveyed an interest in real estate, for he recorded it only in the office of the city clerk of Boston, and not in any registry of deeds. Without deciding therefore whether, if any of the trust fund was invested in real estate, it would have been necessary, in view of the terms of the trust clause, that an assignment be recorded in order to protect the first against later assignees, it is plain that Allen cannot upon this record successfully raise the contention. Nor is it necessary to consider whether there has been an equitable conversion into personal property by the terms of the will within the rule of *Thissell* v. *Schillinger,* 186 Mass. 180.

2. There are no sufficient facts upon which to ground any estoppel against Mrs. Hanley to set up her claim. It was not disputed that Allen had no conference with Mrs. Hanley before taking his assignment and gave her no notice of its existence until six weeks after it had been delivered to him. Allen must have been induced to change his situation through the speech or conduct of Mrs. Hanley, which she knew or ought as a reasonable person to have known might produce that result, before she can be estopped from setting up her claim against him. The master's report finds that she did none of these things. While it might perhaps have been polite for her to have answered his letter of notification, there was no legal obligation resting upon her to do so. *Bragg* v. *Boston & Worcester Railroad,* 9 Allen, 54. *Lincoln* v. *Gay,* 164 Mass. 537. *Tracy* v. *Lincoln,* 145 Mass. 357.

*Decree affirmed.*

*G. L. Huntress,* for the trustees, stated the case.

*L. M. Friedman,* (*P. A. Atherton* with him,) for Thomas Allen.

*E. D. Flanigan,* (of New York,) for Mary A. Hanley, was not called upon.