MARY E. TORREY *vs.* CHAUNCEY D. PARKER & others, trustees,
& another.

Suffolk.   November 16, 1914. — March 31, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Landlord and Tenant*, Construction of lease, Covenants. *Party Wall. Estoppel.*
*Agency*, Existence of relation. *Equity Pleading and Practice*, Cross bill,
Demurrer. *Waiver.*

By a lease to a banking corporation of a two story building on Devonshire Street
in Boston which occupies substantially all of the land of the lessor, the lease
purporting to convey "the entire building" and the "land under the same"
and providing that "the premises" shall "be used only as a banking house,"
that they shall be kept by the lessee "in good repair, order and condition,
including outside repairs to the sidewalk," that the lessee shall not permit "any
placard or sign to be placed upon said building except such and in such place
and manner as shall have been first approved in writing by the lessor," and that
the lessee shall pay "all taxes and assessments on said premises," the lease con-
taining no reservation to the lessor of a right to enter upon the demised prem-
ises to make necessary repairs upon that portion of a party wall forming part
of the building and of a building on an adjacent lot which is six stories in height,
all the lessor's interest in the party wall is conveyed to the lessee for the term
of the lease, and the lessor has no right to compel either the lessee or the owner
of the adjoining building to close openings for windows placed with the lessee's
permission in the wall above the line of the roof of the bank building.

And where under the circumstances above stated it appears that, at the time when
the owner of the adjoining building placed the openings in the wall, he repaired
the wall after the lessor had refused to do so, and that after the lessor had refused

to furnish additional ventilating facilities at the request of the lessee, the owner of the adjoining building placed a ventilating flue in the wall as he was rebuilding it, that the lessee "made no inquiry as to the terms or conditions on which these things were being done, being indifferent as to how" they were "being done and being simply satisfied that" it was getting the desired ventilating, it cannot be said that the lessee is estopped to deny the lessor's right of control over that part of the party wall above the roof line of the banking building; nor is there any basis for a contention upon such facts that there was a relation of principal and agent between the lessee and lessor.

Under such circumstances the giving by the lessee to the owner of the adjoining building of permission to use the party wall above the roof line of the banking building for the purpose of placing the windows there for the adjoining building is not a violation of the promise of the lessee that the demised premises shall be used "only as a banking house," such use of the wall being incidental and subsidiary to and not inconsistent with the exclusive use of the premises for a banking house.

In a suit in equity by the owner of land with a two story building thereon and with a party wall standing upon it and adjoining land extending several stories above that building, against the lessee of the two story building and the owner of the adjoining building to enforce an alleged right to have openings, which had been made in the wall for windows, closed, it is a proper subject for a cross bill by the owner of the adjoining building against the plaintiff and one to whom he had conveyed his right in the party wall to seek to compel the removal of shutters placed by them over the openings in the wall.

By proceeding with a hearing before a master of a suit in equity and a cross suit, the defendant in the cross suit waives a demurrer which was included in his answer to the cross bill.

RUGG, C. J.   This is a bill in equity * whereby the plaintiff, as the owner of an estate on Devonshire Street, seeks to compel certain defendants, who may be called the Parker Trustees and who are the owners of an adjoining estate on Devonshire Street on the south known as the Parker Building, to close certain openings in a party wall between their respective estates, and to enjoin the Cosmopolitan Trust Company from interfering with such closing. The plaintiff became the owner of this estate, subject to a lease for a term of ten years to the Cosmopolitan Trust Company of "the entire building, including the basement, and land under the same, now numbered 74 and 76 Devonshire Street," the lessee covenanting that "the premises" should "be used only as a

---

* This bill, filed in the Supreme Judicial Court on April 27, 1914, and a cross bill, hereinafter described, were referred to Henry E. Warner, Esquire, as master.   Exceptions to his report were overruled and the suits were reserved by *Hammond*, J., upon the report and the pleading for determination by the full court.

banking house." The Trust Company building covers the plaintiff's entire lot between its northerly and southerly boundaries. It is not above two stories in height, except that the southerly wall between the estate of the plaintiff and that of the Parker Building is a party wall extending four stories above the Trust Company building to a total height of six stories, six inches of the wall being upon the Torrey land. In 1913 this wall was rebuilt for fourteen feet back from Devonshire Street above the top of the Trust Company building, by the Parker Trustees as a part of the reconstruction of the building on their lot. See *Fleming* v. *Cohen,* 186 Mass. 323. With the consent of and in consequence of a license from the plaintiff, certain windows were opened in this reconstructed wall. A vital question is, whether the lease to the Trust Company includes this party wall so far as on the plaintiff's land.

The important words used in the lease are comprehensive. "The entire building" as a descriptive phrase indicates a purpose to include all artificial constructions upon the land. The further words which demise the "land under the same," when read with the preceding words, manifest a design to transfer to the tenant all that the lessor owned in that connection. This building is on a chief business street in the centre of a great city. From other parts of the record it appears inferentially, if not expressly, that the land of the plaintiff is substantially all covered by the building. The lease as a whole discloses an intent to divest the owner of all control and responsibility to the tenant or others respecting the estate and to repose the same in the tenant. By the narrowest interpretation, the party wall, so far as it forms a part of the edifice covered by the roof of the Trust Company building, must be treated as a part of the demised premises. It seems more reasonable to assume that the parties intended to include the wall above the roof line in the lease rather than to leave this in the control of the lessor with the obligations and burdens connected with such proprietorship and management. The lessee covenanted to keep "the premises in good repair, order and condition, including outside repairs to the sidewalk." This implies an obligation, apparently coextensive with ownership of the fee of the lessor. It is natural so to construe it, for it places the obligation to repair the wall upon the person in possession of that part of the estate which

must be used in repairing that part of the wall exposed above the roof of the two stories. There is no reservation to the lessor of the right to enter upon the demised premises to make necessary repairs upon that part of the wall. While such a wall might not usually need much repair, yet it is quite possible that lightning, frost or the operation of other natural forces, or some accident other than fire (for which provision is made in the lease) might so affect it as to require attention to prevent further deterioration or injury to the demised banking rooms. The provision of the lease, that the lessee shall not permit "any placard or sign to be placed upon said building except such and in such place and manner as shall have been first approved in writing by the lessor," has a more reasonable scope and seems to be more in harmony with the presumed intention of the parties if it be construed as including the party wall. The kind of sign to be placed upon the front of a two story bank building, with higher buildings on each side, has less interest to the landowner than the kind of signs and placards to be placed upon adjacent loftier and overlooking walls has to the tenant of such a building. The lessee by a covenant in the lease is required to pay "all taxes and assessments on said premises." It would be an unusual arrangement to divide a party wall horizontally for purposes of taxation. It is more natural to expect that the lessee was to pay the entire tax. Interpreting the lease as a whole, in the light of the words employed and the subject matter to which it relates, we are of opinion that it includes the party wall above as well as below the roof of the banking building. See in this connection *Lowell* v. *Strahan,* 145 Mass. 1.

The plaintiff cannot compel the Trust Company to restore the wall to a solid condition, for she has undertaken to cause by her license the openings to be made in a part of the premises covered by its lease, without conferring with her lessee or securing its agreement to any matter in connection with it. She cannot require the Parker Trustees to do it against the protest of the Trust Company, because she has no right in this respect in the wall during the term of the lease.

It follows that the license of the plaintiff to the Parker Trustees to make openings in the party wall was ineffective so far as concerns the rights of the Cosmopolitan Trust Company under its lease. It is not estopped now from asserting its rights as lessee.

It is contended, however, that because it interposed no objection to the arrangement between the plaintiff and the Parker Trustees, it cannot now make any claim to the wall. It does not appear that the Trust Company knew about the negotiations or the final agreement between the plaintiff and the Parker Trustees. The finding of the master upon this point is that, at the time the matter of the rebuilding of the wall came up, the Trust Company requested the agent of the plaintiff to have the ventilation of its premises improved by means of a flue up the side of the wall. This request was refused. The Parker Trustees, however, knowing of this desire on the part of the Trust Company, built a ventilating flue in the wall for the premises of the Trust Company. That company was aware that the wall was being rebuilt, that the flue was being constructed, and that windows were being opened in the new wall, but "it made no inquiry as to the terms or conditions on which these things were being done, being indifferent as to how it was being done and being simply satisfied that" it was getting the desired ventilation. These facts fall far short of working an estoppel in favor of the plaintiff against that company from now asserting its rights under the lease to prevent further mechanical work upon the wall. She has not been induced by its speech, silence or conduct to change her situation to her harm. *Huntress* v. *Hanley,* 195 Mass. 236, 241. *Bragg* v. *Boston & Worcester Railroad,* 9 Allen, 54. *Bronson* v. *Chappell,* 12 Wall. 681, and like cases relied on by the plaintiff, are plainly distinguishable. Nor do these findings show as matter of law that the relation of principal and agent between the Trust Company and the plaintiff existed as to the license from her to the Parker Trustees. Almost every fundamental necessary to the establishment of that relationship is lacking.

The permission by the Trust Company to the Parker Trustees for the openings to remain in the walls is not a violation of its covenant that "the premises shall be used only as a banking house." It is to be noted that the making of the openings for the windows was not authorized by the Trust Company, nor is it seeking to have them closed. Different questions might be presented in that event. In reliance upon a license of the plaintiff as lessor and owner, these openings have been made by a third person. The Trust Company now does not seek to change that

physical situation. It simply insists that the wall remain in the condition in which it now is. It has agreed with the Parker Trustees that it may so remain, so far as it has power to grant such permission.

This is a use of the wall incidental and subsidiary to and not inconsistent with the exclusive use of the premises for a banking house. It does not alter or affect the regnant character of the occupation for banking purposes. *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139. *Emerson* v. *Milton Academy,* 185 Mass. 414. *Albiani* v. *Evening Traveler Co., ante,* 20.' *Stuart* v. *Diplock,* 43 Ch. D. 343.

The Parker Trustees by their acceptance of the license from the plaintiff are in no wise precluded from now availing themselves of the license from the Trust Company. They do not stand toward her in the relation of tenant to a landlord. They were merely her licensees.

The Parker Trustees brought a cross bill against the plaintiff, Torrey, and one J. Murray Howe, who was not a party to the original bill, setting forth an alleged lease from Torrey to Howe of the part of the party wall owned by her in which the windows had been opened, and the placing by him of shutters and other obstructions against these openings, and praying that they be removed. This cross bill relates to the same subject as the original bill. The matters and things alleged in it grow out of and depend upon the rights established by the lease to the Trust Company. It is convenient and expeditious to consider the whole matter in one proceeding. Although a demurrer to the cross bill was filed as a part of the answer to it, the record shows that the original and cross bill were referred to a master who fully heard the parties and filed a report upon all issues raised. The defendants in the cross bill by proceeding to a hearing on the merits must be held to have waived the parts of the answer setting up that the plaintiffs had a plain and adequate remedy at law and that the cross bill could not be maintained. *Driscoll* v. *Smith,* 184 Mass. 221. *Bauer* v. *International Waste Co.* 201 Mass. 197. Indeed, they have not argued the point in this court.

It is apparent from what has been said that Howe has no right to maintain the shutters and should remove them and other structures erected by him upon or adjacent to the wall covered by

the lease to the Trust Company. It is of no consequence in this connection that he acted without malice. His conduct in this respect violates the rights of the Parker Trustees obtained by them from the Trust Company, and he must remove the obstructions.

The prayer of the cross bill that the license from the plaintiff to the Parker Trustees be declared void is denied. It is conceivable that circumstances might arise wherein it may have value even if it is not now of practical worth. It was not void. It simply could not affect adversely the rights of the Trust Company.

The plaintiff's bill is to be dismissed with costs. The cross bill against Howe is sustained and an injunction is to be granted to remove the shutters.

*So ordered.*

*J. T. Wheelwright,* for the plaintiff.
*E. D. Fullerton,* (*R. L. Robbins* with him,) for the trustees.
*Lee M. Friedman,* for the Cosmopolitan Trust Company.
*R. Spring,* for J. Murray Howe.