COSIMO AUGELLO *vs.* HANOVER TRUST COMPANY.

Suffolk. March 26, 1925. — June 27, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Contract*, Performance and breach, Rescission. *Trust Company*, Foreign exchange, In liquidation. *Agency*, Scope of authority. *Practice, Civil*, Exceptions. *Estoppel*. *Interest*.

A contract of a trust company with a customer provided for a payment to him of a certain amount of Italian lire "upon demand on surrender" "properly indorsed," of a receipt for the purchase price, which it had given him. At the trial of an action by the customer against the trust company upon the contract, there was evidence that the customer demanded the lire without surrender of the receipt, and, payment being postponed, finally indorsed the receipt to a third person, who, as admitted by an officer of the trust company, duly presented it for payment on a later date. The jury specially found that due presentment and demand were made by the plaintiff on the date when he made demand without presentment of the receipt, and found for the plaintiff for the amount of the contract and interest from that date. *Held*, that the special finding of the jury as to the date of the presentment and demand was erroneous, but that this did not require a new trial, since, the defendant's officer having admitted due presentment and demand at a later date, remission of interest previous to that date might be ordered.

A clerk in the office of the trust company above described, who was given authority to sell the lire and to issue receipts and contracts relating thereto in the name of the trust company, might be found at the trial of the action above described to have authority from the trust company

to make representations respecting the time when the lire would be paid to the customer.

The mere fact, that, on some of several contracts of the character above described, the plaintiff had not met requirements as to payments, did not preclude him from recovering on those contracts where all requirements had been met, the contracts being separate and independent transactions.

At the trial of an action against a trust company by a customer for money paid to the defendant upon a contract for the purchase of Italian lire, which provided that the lire would be delivered at a later date upon payment of a balance due on the contract, there was evidence tending to show that on many occasions the plaintiff stated to an officer of the defendant that he was ready and willing to pay the entire amount due, but was always told by the officer, in substance, that the bank did not have the lire to deliver; and there was no evidence that the defendant ever purchased any lire for the plaintiff or carried any for his account. On demand by the defendant, the plaintiff at various times paid interest as upon balances unpaid by him and called for by the contract to be paid before delivery of the lire.  *Held*, that

(1) A finding was warranted that the plaintiff was excused from making formal tender as a condition precedent to enforcement of his rights against the defendant;

(2) The payment of interest by the plaintiff did not as a matter of law estop him from asserting his right to rescind the contract and recover the amount paid by him with interest from the dates when the payments were made;

(3) The jury could have found upon conflicting evidence that, while the plaintiff was ready and willing to carry out the contracts by paying the amounts due, the defendant refused and neglected to do so and repudiated its obligation to the plaintiff, and, while upon such findings the plaintiff could have affirmed the contract and sued for damages suffered by the defendant's nonperformance, he was not bound to do so, and might treat the contract as rescinded and at an end and recover the amounts paid thereon with interest from the dates of payment.

In an action against a trust company, of which the commissioner of banks had taken possession, to establish a claim which the commissioner had refused to recognize, the plaintiff is not entitled to interest for any period following the date when the commissioner took possession.

CONTRACT OR TORT with a declaration in seven counts, described in the opinion, for sums of money paid by the plaintiff to the defendant on contracts for the purchase of Italian lire.   Writ dated February 21, 1922.

In the Superior Court, the action was tried before *Weed*, J., any claim in tort being waived in open court at the trial. The contract of May 1, 1919, described in the opinion, was exhibit 1 at the trial, and the contract of November 14, 1919, was exhibit 6.   In October, 1919, and in January and June,

1920, the plaintiff paid on demand of the defendant interest on unpaid balances called for by the contracts of May 15, June 12, July 16 and August 11, 1919. Other material evidence and the substance of rulings asked for by the defendant are described in the opinion. Special questions were submitted to the jury, which, with their answers, were as follows:

"1. Did the plaintiff at any time or times prior to August 11, 1920, present, or cause to be presented, to the defendant, either Exhibits 1 or 6, properly indorsed, and payment thereof demanded in accordance with their terms?" The jury answered, "Yes."

"2. If your answer to one is 'Yes,' on what date was presentment and demand of Exhibit 1 so made?" The jury answered, "May 2, 1919."

"3. If your answer to one is 'Yes,' on what date was presentment and demand of Exhibit 6 so made?" The jury answered, "November 14, 1919."

"4. If your answer to one is 'Yes,' what was the value in United States money of 31,500 Italian lire on the day when presentment and demand of Exhibit 1 was made plus 2½ per cent thereon from May 1, 1919 to the date of such presentment and demand?" The jury answered, "$4,200.23."

"5. If your answer to one is 'Yes,' what was the value in United States money of 10,000 Italian lire on the day when presentment and demand of Exhibit 6 was made plus 2½ per cent thereon from Nov. 14, 1919, to the date of such presentment and demand?" The jury answered, "$839.00."

"6. Was there a breach of contract by the defendant of the sale of Italian lire evidenced by Exhibit 2 at any time prior to August 11, 1920?" The jury answered, "Yes."

"7. If your answer to question 6 is 'Yes,' did the plaintiff by his conduct excuse such breach by the defendant?" The jury answered, "No."

"8. If your answer to question 6 is 'Yes,' and to question 7 is 'No,' what was the value in United States money of 30,000 Italian lire on the date of such breach by the defendant?" The jury answered, "$3,836.31."

Separate verdicts for the plaintiff on the several counts of the declaration were returned as follows: on count 1 for $5,596.50; on count 2 for $972.62; on count 3 for $958.47;

on count 4 for $757.45; on count 5 for $798.42; and on count 6 for $1,090.70.  The defendant alleged exceptions.

*F. H. Smith, Jr.,* for the defendant.

*J. P. Walsh,* for the plaintiff.

CROSBY, J.  This is an action of contract or tort to recover payments, amounting to $7,139, made by the plaintiff on six contracts for the purchase of Italian lire.  The claim in tort was waived by the plaintiff at the trial in the Superior Court.  Two of the purchases were paid for in full at the time they were made and receipts were delivered by the defendant to the plaintiff.  On the other four purchases the plaintiff made payments on account and signed contracts to pay the balance on or before designated dates with interest at six per cent.  The commissioner of banks of the Commonwealth, acting under authority of St. 1910, c. 399, now G. L. c. 167, § 22, took possession of the property and the business of the defendant on August 11, 1920.  The plaintiff filed two proofs of claim against the trust company: one for $5,039, paid the defendant as the full price of two of the purchases; and the other for $2,100, paid as partial payments on the other four.  The balances due on the partly paid contracts amounted to $11,076.44.  Both claims were rejected and this action was brought.  The plaintiff's second substitute declaration, upon which the case was tried, was in seven counts, six respectively for the amount paid on each of the purchases, and a count for money had and received in the sum of $7,139, the total of the plaintiff's payments on all the purchases.

The defendant's answer was a general denial and plea of payment.  It also filed a declaration in set-off in five counts, in which it sought to recover the unpaid balance with interest on the four contracts upon which only partial payments had been made.

On May 1, 1919, the plaintiff paid the defendant $4,200, and was given a receipt for thirty-one thousand five hundred lire.  On November 14, 1919, the plaintiff paid the defendant $839 and was given a receipt for ten thousand lire.  It was agreed at the trial that Paola Augello, the wife of the plaintiff, had released any and all claims against the

trust company arising out of the receipt dated May 1, 1919; and the fact that it was written for the account of Cosimo Augello and Paola Augello "is not to be considered as material on the issues raised in the case."

The other four contracts, all made in 1919 and dated May 15, June 12, July 16, and August 11, respectively, were for the purchase of certain lire from the defendant upon which partial payments had been made, and in each contract it was stipulated that the balance due should be paid on or before a date therein specified.

The form of the receipts given for the completed purchases was substantially the same and recited that the defendant "agrees upon demand on surrender of this receipt properly endorsed that the same shall be paid plus interest at the rate of $2\frac{1}{2}\%$ per annum for date hereof. These receipts payable either by check for the full amount or by U. S. Dollars at the current rate of exchange on the date of delivery."

As to the contracts on which payments in full had been made by the plaintiff, he was entitled to delivery of the lire at any time on demand on or before the dates specified in the receipts respectively. The evidence showed that the purchases were made through one Nobile, a clerk in the employ of the defendant in its bank, who in the name of the trust company signed the documents relating thereto. The plaintiff testified, in substance, that, after having made all his purchases, on several occasions he went to the bank and demanded of Nobile the lire he had bought by virtue of the contracts above referred to; that he was told on each occasion the bank could not give him the lire as it did not have them; that the trust company had a large deposit of lire in Naples and as soon as the lire were received by the bank they would be delivered to him; that he need not worry, the company was perfectly responsible.

One Corsino testified that he took the plaintiff to the bank and told Nobile the plaintiff wanted to buy some Italian lire; that he (Corsino) bought fifty thousand lire; and the plaintiff bought about thirty-two thousand, for which Nobile gave the plaintiff a receipt and told him any time he wanted the lire he could have them.

The plaintiff testified that when he made the last purchase, on November 14, 1919, Nobile said to him that the bank expected "all our lire here and you shall have them all, all the lire that you have bought." He further testified that, in November, 1919, after all the purchases had been made, he went to the bank and asked for the money that he had paid on the six transactions and was told by Nobile that he would have to wait a little while longer for the lire; that he would finally receive them; that they had none to give him at that time. The plaintiff afterwards indorsed the receipts for the two fully paid purchases to Pistorino and Yunes. He testified that he made these indorsements two or three months before the bank was closed as he was unable to get the lire and thought that he would turn the receipts over to Pistorino to get them for him.

One Merrill, a witness called by the plaintiff, testified that he was manager of the foreign department of the trust company from July 16, 1919, until it was closed on August 11, 1920; that Pistorino saw him with reference to the indorsements of the two receipts by the plaintiff two or three months before the trust company was closed, and demanded drafts on the two receipts; that he (Merrill) told him he could not give him drafts because of the unpaid contracts, but that if Pistorino would guarantee payment of the contracts, he would give him the drafts; but that Pistorino refused to do so.

It is plain that the receipts which were offered in evidence were properly indorsed, and that it could have been found that they were duly presented to the defendant by the plaintiff's authorized agent. Upon such a finding it was the duty of the defendant to deliver to Pistorino the lire or a check or draft or money of the United States for the amount called for in the receipts. The six purchases made by the plaintiff were separate and independent transactions, and the defendant had no right to refuse to deliver the lire, or the equivalent, on these fully paid contracts, until the balance due on the other purchases was paid; nor could the defendant rightfully impose as a condition of such delivery

that Pistorino should guarantee the payment of the amount due from the plaintiff on all the contracts.

The jury found, in answer to special questions submitted to them, that the plaintiff presented to the defendant, properly indorsed, the receipts for the two fully paid purchases and demanded payment in accordance with their terms. They further found that such presentment and demand under the receipt dated May 1, 1919, were made on May 2, 1919; and that under the receipt dated November 14, 1919, they were made on the same date. The evidence, which is reported, does not warrant findings that presentment and demand of these receipts, properly indorsed, were made on those dates; but as it appears from the testimony of the defendant's manager, Merrill, that presentment of the receipts, properly indorsed, was made to him, and demand was made by Pistorino, as agent for the plaintiff, at a later time, and before the bank was closed, the erroneous findings above referred to are immaterial and cannot affect the rights of the plaintiff; and they were not prejudicial to the defendant, in view of the undisputed testimony of its manager.

The contention of the defendant that Nobile's only authority was to sell lire, and therefore he had no authority to make any representations respecting the time when they would be delivered cannot be sustained. Incidental to his authority to make contracts on behalf of the bank to sell lire, he could properly state when such purchases would be delivered, and could bind the bank thereby.

As to the contracts upon which partial payments had been made, the plaintiff was not entitled to a delivery until he had paid the balances due on or before the times respectively specified; but if, as the jury could have found, he was ready and willing to pay in full such balances, he was entitled to receive the value of the lire by draft or check or money of the United States, and it was the duty of the defendant to make delivery to him. He was bound to tender the amount due by an actual production of the money and offer to pay it, unless by the declarations of the defendant's agent such tender was excused or waived. *Mondello* v. *Hanover Trust Co.* 252 Mass. 563, and cases cited. There was

ample evidence to show that on many occasions the plaintiff stated to Nobile that he was ready and willing to pay the entire amount due, but was always told by Nobile, in substance, that the bank did not have the lire to deliver. If this evidence was believed the plaintiff was excused from making a tender. The contracts were for the purchase of lire, and upon payment of the amount due he was entitled to receive what he had bargained for at the time when he expressed himself as ready and willing to pay for the same. The record recites: "It was agreed . . . that except for a period beginning July 18, 1919, and continuing for about a month, the bank did not have in its possession or on deposit enough lire to cover all its outstanding obligations in lire, including paid and part paid contracts and it never purchased lire specifically for any contract but bought and sold from time to time."

As there was no evidence that the defendant ever purchased any lire for the plaintiff or carried any for his account, it was not entitled to charge him with interest on that account. Yet if the plaintiff was obligated to pay interest on account of the contracts after he had demanded the lire, such payments would not, as matter of law, amount to an affirmance of the contracts. Whether an estoppel has been established is a question of fact where it is possible to draw more than one inference from the evidence. "In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of estoppel is not applied except when to refuse it would be inequitable." *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. *Tracy* v. *Lincoln*, 145 Mass. 357, 360. *Huntress* v. *Hanley*, 195 Mass. 236. *Torrey* v. *Parker*, 220 Mass. 520, 524.

In the circumstances disclosed by the evidence the payment of interest cannot be said to estop the plaintiff from asserting his rights under the contract. The jury could have found upon conflicting evidence that, while the plaintiff

was ready and willing to carry out the contracts by paying the amounts due, the defendant refused and neglected to do so and repudiated its obligation to the plaintiff. Upon such findings the plaintiff was authorized to treat the contracts as rescinded and at an end. The parties are in the same position as if the contracts never had existed, and the plaintiff is entitled to recover what he has paid. His repeated demands upon the defendant for the return of the money which he had paid were sufficient notice that he had elected to rescind. *Ballou* v. *Billings,* 136 Mass. 307. *Runkle* v. *Burrage,* 202 Mass. 89, 99. *Putnam* v. *Bolster,* 216 Mass. 367, 370. He could have affirmed the contract and sued for damages suffered by the defendant's nonperformance, but was not bound to do so. *Cohen* v. *Wintman,* 236 Mass. 471, 472.

On the question of interest the judge instructed the jury that, if the plaintiff was entitled to recover on the fully paid contracts, he was entitled to interest at the rate of two and a half per cent from the date of such payments to August 11, 1920, and that from that date he was entitled to interest at six per cent to the date of the verdict. He also instructed them that, if the plaintiff was entitled to recover on the partially paid contracts, he could recover interest at the rate of six per cent to the date of the verdict. These instructions were erroneous. The right of a creditor to interest cannot extend beyond the date when the commissioner of banks took possession of the trust company. *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills,* 247 Mass. 530, 538. *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 435. The general rule relating to interest, stated in the above cases, is to be followed notwithstanding what was said in *Cosmopolitan Trust Co.* v. *Ciarla,* 239 Mass. 32, 36, 37.

The result is that as to the sums of $4,200.23, and $839 respectively found due on the fully paid contracts, the plaintiff was entitled to interest at the rate of six per cent from May 11, 1920, the date of presentment and demand, until August 11, 1920, when the commissioner took possession. As to the amounts paid on the partially paid contracts,

the plaintiff was entitled to interest at the rate of six per cent from the date of such payments until August 11, 1920.

The defendant's motion for directed verdicts was rightly denied. The requests for rulings need not be considered separately; some of them called for instructions upon questions of fact; the others, so far as correct in law, were covered by the instructions. The second, third and fourth exceptions to the charge must be overruled.

If the plaintiff, within thirty days from the date of the rescript, files a written remittitur of all interest included in the verdict, in accordance with this opinion, the exceptions are to be overruled; otherwise they are to be sustained.

*So ordered.*