Pettingell, P. J.
The plaintiff is engaged in the business of buying and selling grain. The defendant, whose business is that of hatching chicks, orally ordered three cars of white oats from the plaintiff who mailed a written confirmation of the order to the defendant. Various purchases of other items were made by the defendant, some of which the plaintiff was forced to cancel because of the com dition of the market. The cancellation of its orders displeased the defendant. In July, 1946 the plaintiff and the defendant had a conversation in which there was talk of cancellation of the contract of the order for the three cars in which conversation the defendant claimed it orally can-celled the order. July 31, 1946, Cobb, as agent for the defendant, signed and mailed the following letter to the plaintiff: “I am in receipt f your various letters cancel-ling out the orders that we ive in good faith for mashes for May and June delivery, lone of which were made. As I told you the other day, I can see no reason why this privi *63 lege of cancellation is on the one side and not on the other. Consequently, please accept my cancellation of all three cars of oats, dated May 27th under contract number 6077. We will definitely not accept them. We regret this but because of your failures stated above, we feel perfectly justified. ’ ’
On August 1, 1946, the plaintiff sent a letter to Cobb in which it refused to accept the cancellation and insisted on going on with the order. On August 13, 1946, following a telephone instruction of July 19, 1946, the plaintiff sold the oats and brought this action against the defendant for damages. The rules of the Boston Grain & Flour Exchange governing trade in grain were introduced in evidence.
At the close of the trial and before the final arguments the defendant made the following requests for rulings; appended to each is the disposition made by the trial judge.
(1) “Where the Statute of Frauds (G. L. Ter. Ed. Chapter 106, section 6) has been pleaded by the defendant, the plaintiff has the burden of proving compliance with the statute. Weiner v. Slovin, 270 Mass. 392; Kalker v. Bailen, 290 Mass. 202. Granted * (2) A contract within the Statute of Frauds may be orally repudiated by the party sought to be charged thereunder at any time before the Statute of Frauds has been complied with. Lippincott v. Stringer, 80 Pa. Super. Court 162, 1922; Porter v. Patterson, 42 Ind. App. 404, 1908, 85 N. E. 797; Watkins v. Simplex Time Recorder Co., 316 Mass. 217; Northwestern C. Milling Co. v. Allebach, 82 Pa. Super. 563, 1924; 37 C. J. S. § 180 (d), page 666. Granted. (3) Where the party to be charged has attempted to cancel the contract within the Statute of Frauds, a later memorandum in writing signed by the party to be charged does not comply with the Statute of Frauds. N. V. Reinders, etc. v. Imperial Products Co., Inc., 18 Pa. D & C Reports, 258, *64 1933. Denied as immaterial as I do not find the facts upon which this request was based. (4) Upon all the evidence as a matter of law the defendant repudiated the order he gave to the plaintiff for oats on or about May 27,1946. Granted, I find said order was repudiated on August 1,1946. (5) Where a party sought to be charged orally revokes his order or repudiates the alleged oral agreement and following that writes a written confirmation of the oral repudiation, the written confirmation is not a sufficient memorandum under the Statute of Frauds. Lippincott v. Stringer, 80 Pa. Super. 162, 1922. Denied as immaterial as I do not find the facts upon which this request is based. (6) Where an oral contract is within the Statute of Frauds but is subsequently substantially modified, the plaintiff must sue on the contract as modified and not on the original contract. Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239; Weissner v. Ayer, 176 Mass. 425. Denied as immaterial as I find that the contract was not substantially modified. (7) To comply with the Statute of Frauds, a memorandum relied upon by the plaintiff must state the essential terms of the contract upon which the plaintiff must rely. Webster v. Condon, 248 Mass. 269; Dutton v. Bennett, 256 Mass. 397. Granted although said terms may be incorporated by reference. (8) Where a contract is within the Statute of Frauds and has been subsequently orally modified by the parties thereto, the written memorandum relied upon by the plaintiff to satisfy the Statute of Frauds must contain the essential terms of the contract as modified or incorporate said terms by reference. Denied as immaterial as I do not find that the contract was substantially modified. (9) Upon all the evidence the memorandum or memoranda offered by the plaintiff to show compliance with the Statute of Frauds do not express the terms of the contract between the parties as modified or incorporated said terms by reference. Denied. Same Reason as No. 8. (10) Where the plaintiff relies upon a contract within the Statute of Frauds, the defendant may successfully defend by showing that the contract has been modified by the parties and that under said contract as modified, the defendant has either complied with its terms or the plaintiff has substantially *65 failed to comply with its terms. Whittier v. Dana, 10 Allen 326; Cummings v. Arnold, 3 Met. 486. Denied. Same Reason as No. 8. (11) Where a contract without the Statute of Frauds is modified, the plaintiff cannot sue on the contract as modified where it is within the Statute of Frauds. Rosenfeld v. Standard Bottling & Extracts Co., 323 Mass. 239. Denied. Same Reason as No. 8. (12) Where the original contract has been modified, the plaintiff must sue upon the contract as modified. King v. Faist, 161 Mass. 449. Denied. Same Reason as No. 8. (13) Validation by a memorandum of an original agreement will not validate the agreement as later modified. Williston on Sales (2nd ed.) P. 238, 239. Denied. Same Reason as No. 8. (14) Until a contract has become enforceable under the Statute of Frauds, the party to be bound may stipulate any modification in the terms of the contract that he wishes. Williston on Sales (2nd ed.) P. 142. Denied. Same Reason as No. 8. (15) Until the Statute of Frauds is satisfied, the defendant may withdraw without liability. Williston on Sales, (2nd ed.) P. 131. Granted. (16) Where a seller fails to deliver g’oods under one contract, the buyer may refuse to accept goods under another contract of the seller, where the failure of the seller under the first contract -involves a failure of consideration under the second contract. Williston on Sales, (2nd ed.) P. 1189; Hart-Parr Co. v. Duncan, 75 111. 59: Guaranty Securities Co. v. Equitable Trust Co., 136 Md. 417, 110 Atl. 860. Granted as a matter of law but I do not find the facts or circumstances upon which this request is based.”
The plaintiff also duly filed requests for rulings but said requests were treated by the court as waived.
The Court made the following findings and rulings:
“I FIND (1) that on May 27, 1946 the plaintiff, a broker in grain and feed, sold to the defendant on his oral order 7500 bushels of oats at $1.01% a bushel, said oats to be delivered in August, 1946. Written confirmation of this purchase was sent by the plaintiff to the defendant on the day of purchase. (2) That on July 31, 1946 the defendant by letter, received by the plaintiff on *66 August 1, 1946, cancelled said purchase without legal justification therefore, and that said cancellation was a breach of his agreement with the plaintiff. (3) And rule that the letter of cancellation of J uly 31,1946, written by the defendant was sufficient memorandum in writing to satisfy the statute of frauds. (4) That the market price of oats August 1, 1946, the date of cancellation by the defendant, was 91 $ a bushel and that the plaintiff is entitled to the difference between the purchase price of the oats and the market price on the day of cancellation, plus the expense of sale of 1<¡> per bushel. (5) Therefore, for the plaintiff in the sum of $862.50 with interest from the date of the writ. ’ ’
The plaintiff’s requests for rulings are treated as waived. This report contains all the evidence material to the questions reported.
When the defendant ordered three carloads of oats of the plaintiff and the defendant accepted the order, a contractual relation was created which neither of the parties' could terminate except in one of certain definite ways. They could perform the contract which in this instance the defendant chooses not to do. They could by a new agreement alter or change the contract as they did partially in this case by changing the value involved into money through a sale, leaving the controversy growing out of their differences to continue as to the money instead as to the oats originally the subject of the contract. The defendant as here can deny any liability whatever and leave the matter for the courts to decide. Neither party alone, however, can decide the matter. Having entered into the contract a responsibility is fastened upon each which can be decided only by-' the courts. The defendant contends, nevertheless, that he-first orally cancelled the contract and then cancelled it by a letter, cancellations which are based upon the assumption that he had a fundamental right to end the contractual *67 relation, a contention which is evidenced by his expression that other cancellations by the plaintiff had become too burdensome and that presumably he had his own right of cancellation.
The most common reason for avoiding a contract is the presence of fraud on the part of one of those contracting. The present action, however, is an action at law, not a bill in equity, and furthermore there is not in the case the least evidence of fraud. At law the right to abrogate a contract, eliminating fraud, is some underlying basic element such as illegality, failure of consideration or some other destructive matter interfering with the entire contractual relation. Runkle v. Burrage, 202 Mass. 89, at 99; Plumer v. Houghton & Dutton Co., 281 Mass. 173, at 176; De Angelis v. Palladino, 318 Mass. 251, at 257. Nothing appears here which comes within the scope of the cases just cited which authorizes or empowers the defendant to cancel the contract. He must deal with it as a continuing force until the contract is performed or the court discharges him.
It is true that the defendant says that he repudiated the contract and that the court says that he repudiated it. “To repudiate” is a term of the civil law having to do with the separation of a man and woman married or affianced; or it may mean the expression of a determination to have nothing to do with any particular thing; a repudiation of a legacy is the abandonment of such legacy and the renunciation of all right to it. Bouvier’s Law Dictionary, Third Edition (Rawle), 2903. As for its use in the fatter sense, see Electric Welding Co. v. Prince, 195 Mass. 242, which was an action by a corporation to enforce subscriptions for its shares. By the law of England so long as a shareholder allows his name to remain on the register of such a company he is bound to pay all calls justly made' upon him for payment of the capital stock of which he is *68 the registered holder, and that, if a registered shareholder has a just ground for repudiating the allotment of shares to him, he must repudiate it without delay or lose his right of repudiation. In that case it was held that the right of repudiation had been lost by delay.
In Daley v. People’s Building Loan & Savings Assn., 178 Mass. 13, an action by a shareholder to recover monthly payments by a shareholder, the corporation having mistakenly notified him that his shares were forfeited by failure to keep up his payments, Mr. Justice Holmes at page 18, said “a mere refusal to pay money when due, especially a refusal based upon the terms of the contract and in good faith although mistakenly believed to be justified by it, is not a repudiation of the contract, and does not warrant a rescission. The only remedy is a suit upon the contract, not a suit for the consideration.” The case went off on another point.
It may be that both the defendant and the judge had in mind that legal obligations may be repudiated as certain States of the United States have repudiated bonds issued by them, but such repudiations are based not upon any legal theory of a right so to act, but because the said state being sovereign has chosen not to permit actions against them to collect the bonds. An individual citizen possesses no such power and cannot act upon such an exemption. Massachusetts, as a sovereign state, has granted permission for actions to be brought against it in certain cases but such statutes are construed strictly. Troy & G. & R. Co. v. Commonwealth, 127 Mass. 43; Hodgson v. City of Haverhill, 193 Mass. 406; McArthur Bros. v. Commonwealth, 197 Mass. 137; Lemon v. Commonwealth, 236 Mass. 599. One may not abandon a contract by which he is bound. Such an abandonment is not a good defense unless the abandonment is mutual and is pleaded. Mark v. Stuart-Howland Co., 226 Mass. 35, at 41, 43.
*69 Failure of a party to perform a contract may entitle the other party to rescind the contract and to recover the consideration paid. Cohen v. Wintman, 236 Mass. 471, at 472. On the other hand he can affirm the contract and sue for damages as here. Augello v. Hanover Trust Co., 253 Mass. 160, at 168. If the contract was valid, and defendant was not justified in breaking it, judgment is to be entered for the plaintiff. Jewett Publishing Co. v. Butler, 159 Mass. 517, at 521. Considering the law of contracts, for a party to say, “I repudiate the contract” means nothing more than for him to say that he denies all liability and, inferentially, that he leaves the matter for the courts to decide.
The particular matter of importance in the present situation, however, is the relation to the case of the memorandum required by the Statute of Frauds to make the contract enforceable. The memorandum and contract are two different matters. The contract exists as any other contract. The Statute of Frauds, however, says that a contract within its scope is not enforceable unless it is evidenced by a memorandum setting forth certain specified features of the contract and signed by the party sought to be charged. In this case it appears that at the outset the defendant signed nothing. He then orally “repudiated” the contract and then, by a letter which perfectly satisfied the statute as a memorandum, repeated his repudiation. If he had no power by a so called “cancellation” to end the contract, it was still alive when his letter provided lacking memorandum necessary to make it enforceable under the statute.
In our opinion there was a valid contract which the defendant refused to perform and attempted to abrogate, having no legal reason for doing so. As there was no memorandum signed by the defendant, the plaintiff could not sue on the contract. But the defendant having furnished a memorandum which made the contract enforce *70 able, although under the misconception that he had can-celled the contract, the statute is no longer a bar to his' recovery. A memorandum is sufficient even one furnished at any time after the making of the contract, if before suit brought. White v. Dahlquist Mfg. Co., 179 Mass. 427, at 432.
Of the sixteen rulings requested by the defendant the trial judge granted the first, second, fourth, seventh, fifteenth, and sixteenth, the latter as a proposition of law but the judge stating that he did not find the facts or circumstances upon which this request is based. Certain requests were denied as immaterial, the third because he did not find the facts upon which the request is based, the fifth for the same reason, the sixth because he did not find that the contract was substantially modified; the eighth, ninth, tenth, eleventh, twelfth, thirteenth for the same reason. The second, fourth, seventh, fifteenth and sixteenth which were granted all deal with repudiation or the rights of a party before or after the establishment of a memorandum. They are at least favorable to the defendant but in view of the cases already cited their granting is questionable law in some cases. In any event they were requested by the defendant and it cannot be heard to object to their allowance. DiLorenzo v. Atlantic National Bank, 278 Mass. 321, at 323; Thomas H. Jewett, Jr. Inc. v. Keystone Driller Co., 282 Mass. 469, at 475; Woodman v. Haynes, 289 Mass. 114 at 117, 118; Baker v. Davis, 299 Mass. 345 at 348; Korb v. Albany Carpet Cleaning Co., 301 Mass. 317, at 318.
The trial judge made four findings of fact besides finding for the plaintiff in the amount of $862.50. Some of the findings are undoubtedly inconsistent with the rulings given, as for instance the second, fourth and fifteenth. The defendant, however, is in no position to take advantage of any such inconsistency as he has failed by a motion for a *71 new trial, based on the inconsistency, or by any other pleading to call the attention of the trial judge to the inconsistency. Duralith Corporation v. Leonard, 274 Mass. 397, at 401; DiLorenzo v. Atlantic National Bank, 278 Mass. 321, at 324; Korb v. Albany Carpet Cleaning Co., 301 Mass. 317, at 318; Langdoc v. The Gevaert Company of America, Inc., 315 Mass. 8, at 12; Godfrey v. Caswell, Mass. Adv. Sh. (1947) 319, at 320. Nevertheless, although the defendant by his inaction is not in a position to claim to be aggrieved because of the inconsistency the case is left in some confusion, some of which may be due to different theories of what the trial judge meant by “cancellation” and “repudiation”. The case is then clearly within the class of those in which the court had held that a right decision will' be upheld even though the reasons stated for it may be wrong.
“Where a judge adopts an erroneous rule of law but does not follow it and arrives at a right result, the finding will stand.” Freeman v. Robinson, 238 Mass. 449, at 452; Crawford v. Roloson, 254 Mass. 163, at 168; Williams v. Pittsfield Lime & Stone Co., 258 Mass. 65, at 71; Reilly v. Selectmen of Blackstone, 266 Mass. 503, at 512; Hamilton Mfg. Co. v. Lowell, 274 Mass. 477, at 487; Alderman v. Noble, 296 Mass. 30, at 33; Rathgeber v. Kelly, 299 Mass. 444, at 446. “Where a party has in no way changed his position in reliance upon a ruling too favorable to himself he has no such vested interest in that ruling that he can compel the court to carry it into effect by overturning a general finding supported by subsidiary findings which were not affected by the ruling, when the record taken as-a whole shows that the general finding was right. A party whose cause has been rightly decided according to law on facts, duly established is not ‘ aggrieved. ’ ” Slocum v. Natural Products Co., 292 Mass. 455, at 458. The facts *72 which the trial judge followed, as set forth in his findings was that the defendant’s attempted cancellation was without legal justification and was a breach of the contract between the plaintiff and the defendant, the letter of July 31, 1946 being a sufficient memorandum in writing to com* ply with the Statute of Frauds. The defendant has argued that he is aggrieved by the manner in which the plaintiff conducted the sales of the oats. This issue was not raised in the district court and cannot be raised in this division. No request for rulings were filed which affect this issue; no mention of it is contained in the report. It is not before us. Smith v. Lincoln, 198 Mass. 388, at 392; Loanes v. Gast, 216 Mass. 197, at 199; Duggan v. Woodis, 246 Mass. 431, at 434; Weiner v. D. A. Schultz, Inc., 275 Mass. 379, at 384; Gilbert v. Beacon Hill Credit Union, 287 Mass. 433, at 440; Commissioner of Banks v. T. C. Lee & Co., Inc., 291 Mass. 191, at 193. No prejudicial error appearing the report is to be dismissed.

 The trial court’s ruling and findings on each of the Defendants’ Requests for Rulings are printed in italics following the request.